IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA


UNITED STATES OF AMERICA,      )
                               )
      Plaintiff,               )
                               )
      -vs-                     )   Case No. M-17-368-STE
                               )
JERRY DRAKE VARNELL,           )
                               )
      Defendant.               )


\* \* \* \* \* \* \*

TRANSCRIPT OF PROCEEDINGS

HAD ON AUGUST 25, 2017, AT 1:00 P.M.

BEFORE THE HONORABLE SHON T. ERWIN

U.S. MAGISTRATE JUDGE, PRESIDING

\* \* \* \* \* \* \*



MOTION HEARING




Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

CHRISTINA L. CLARK, RPR, CRR
United States Court Reporter
200 N.W. Fourth Street, Suite 5419
Oklahoma City, Oklahoma  73102
christina_clark@okwd.uscourts.gov - ph(405)609-5123

A P P E A R A N C E S

ON BEHALF OF THE GOVERNMENT:

    Mr. Matt Dillon
    Mr. Mark R. Stoneman
    Assistant United States Attorneys
    U.S. Attorney's Office
    210 West Park Avenue
    Suite 400
    Oklahoma City, Oklahoma 73102

ON BEHALF OF THE DEFENDANT:

    Ms. Terri A. Coulter
    Attorney at Law
    P.O. Box 720597
    Oklahoma City, Oklahoma 73172

# P R O C E E D I N G S

1
2       (The following proceedings were had August 25, 2017, with
3  Court, counsel, and defendant present:)
4       THE COURT:  This is USA vs. Jerry Drake Varnell.
5  The case number is M-17-368.
6      Counsel, if you want to announce your appearances.
7       MR. DILLON:  Matt Dillon and Mark Stoneman for the
8  United States.
9       MS. COULTER:  Terri Coulter appearing with
10  Mr. Varnell.
11       THE COURT:  All right.  Before the Court are
12  defendant's unopposed motion for hearing to determine
13  competency to stand trial and abate all scheduled proceedings.
14  That's ECF-10.  We've also got -- a later filing we've got
15  defense's motion to withdraw Document No. 10.  That's ECF-18.
16  And there is a response to that from the government.  And,
17  lastly, we have plaintiff's motion -- the government's motion
18  to determine competency, and that is ECF No. 22.
19      So two big issues, and that is what happens to the
20  withdrawal of the motion but perhaps the larger issue is
21  whether a competency hearing ought to be ordered.
22      Any prehearing announcements from the government,
23  Mr. Dillon?  Prehearing announcements?
24       MR. DILLON:  I don't believe so.
25       THE COURT:  Anything you want to say?

1          All right.  Anything from the defense, Ms. Coulter?

2               MS. COULTER:  Well, your Honor had in its order

3     indicated that I had until --

4               THE COURT:  -- until 1:00.

5               MS. COULTER:  -- 1:00 to file a response.  I did not

6     receive those until late last night.  I have an oral response.

7     I don't have --

8               THE COURT:  Certainly.  Well, do you want to just

9     incorporate that into your argument later?

10               MS. COULTER:  Uh-huh.

11               THE COURT:  Is that okay?

12               MS. COULTER:  Yes, sir.

13               THE COURT:  All right.

14          Mr. Dillon, opening statement?

15               MR. DILLON:  Your Honor, the United States' position

16     is simply that the defendant has raised competency pursuant to

17     18 United States Code 4241 and asked for a competency hearing.

18          The Court's order addressed that motion where the

19     defendant sought a hearing pursuant to that and the order --

20     the Court discussed that there was a dispute as to how to

21     proceed under 4241 and 4247, referencing a teleconference that

22     had been had.  In that teleconference the United States had

23     discussed that we had wanted a designated neutral and

24     independent evaluator.  The defendant had simply wanted -- I

25     believe the words were "time to investigate competency."  We

1   know now that the reality was that apparently there was an

2   evaluation had by some unknown expert at some point in time.

3        Our position is that the defendant can't simply withdraw

4   this motion, that the Court needs to make a finding now as to

5   the defendant's competency; that the Court, in making that

6   finding, can't make this finding in an ex parte fashion based

7   on a report that the government is not privy too.  We don't

8   believe that's what's contemplated with 4241 and 4247.

9        And that based on that, we are also making a motion

10  for -- again, what we had asked for, an independent evaluation

11  as contemplated by the statute and that the defendant be sent

12  to Bureau of Prisons for that.  The statute contemplates a

13  neutral party and that a report be filed with the Court and

14  both parties when an examination is sought.  Here an

15  examination was, in fact, conducted.  The defendant simply now

16  wishes to essentially walk away from that motion stating that

17  they no longer have concerns.  But with the concerns that have

18  been raised and things that occurred after, the government now

19  has its own concerns.

20        We believe that if the independent evaluation had

21  occurred pursuant to statute, the parties would be able to

22  have that evidentiary hearing with evidence that everyone is

23  aware of, that there wouldn't be this report that's unknown to

24  parties and that the Court would be able to make that finding

25  whether it be by stipulation, because parties are aware and

1    would be privy to it, and that everybody would have confidence

2    in those findings and that the Court would be able to make

3    that finding.

4         The entire point, as we state in our brief, is that the

5    Court is the ultimate party -- or person to determine the

6    defendant's ability to see once either party raises a doubt or

7    a concern as to the competency of the defendant to proceed.

8         Just because the defendant now states that they don't

9    have concerns does not alleviate the concerns of the

10   government in this matter.  If they are allowed to withdraw

11   this motion, however, that is why we have gone ahead and filed

12   our own motion with our concerns and would ask to proceed with

13   that.

14         THE COURT:  All right.

15       Ms. Coulter, opening?

16         MS. COULTER:  Your Honor, on August 14th I was

17   appointed to represent Mr. Varnell.  Shortly after that day, I

18   became aware that there was a history of paranoid

19   schizophrenic -- schizophrenia.  Doing due diligence, I filed

20   Document 10 asking simply for an abatement and a hearing.  I

21   did not ask for a competency evaluation, only a hearing.  And

22   due diligence required I investigate these issues.  I

23   immediately -- also, I might add, I immediately contacted the

24   federal liaison at Grady County Detention Center and faxed him

25   copies of Mr. Varnell's prescription so that he could be

1    competent.

2        Shortly after that I had Mr. Varnell examined by an

3    eminently qualified forensic doctor.  The results of that

4    examination were that, in fact, Mr. Varnell is competent to

5    assist his attorney.  And I concur in that finding.  I have

6    had no problem communicating with him about court proceedings,

7    what is involved in his case, and he understands.  So he is

8    ready moving forward.

9        Counsel has provided to the Court to review in camera the

10   credentials of this eminently qualified doctor, and the Court

11   has had an opportunity to review his report.  Thus, the

12   Document 18, the motion to withdraw Document 10.  I might add

13   that at this time there is no issue of an insanity defense.

14   Those are two separate issues.  Competency to assist counsel

15   and insanity defense, two different things, governed by

16   different statutes.

17       I lost my place.  Just a second.

18       The government objected to this motion in their Document

19   21 and filed their own motion in Document 22.  But in those

20   documents the government states no basis for their motion

21   other than the fact that this counsel had some initial

22   concerns.  Those concerns have been resolved.  And those

23   concerns have been addressed in a report that the Court has

24   had in camera review of by, once again, an eminently qualified

25   forensic doctor.

1      On page five of government's Document 21, they state:

2  The FBI's investigation, which include a number of recorded

3  conversations involving Mr. Varnell, did not yield facts that

4  would cause serious misgivings about competence.

5      Then the government goes on to talk about the media

6  attention this case has garnered when they are the very ones

7  that created the media attention.  It seems the government is

8  now asking for an evaluation because of the media hype that

9  they themselves caused.

10      On page six of Document 21, they said:  "The unusually

11  public nature of this prosecution makes it especially

12  important to follow through on a competency hearing."  Once

13  again, they are the ones that grandstanded and created the

14  public interest.

15      Unusual public nature of the case is not valid grounds

16  for a competency hearing.  The government has said they have

17  no reason to believe he was incompetent.  Well, neither does

18  his defense counsel.

19      If the Court were to even consider the government's

20  motion for an evaluation -- for another evaluation to be had,

21  then I would request a separate hearing to decide the

22  parameters of such an evaluation, keeping in mind at all times

23  that Rule 12.2 of the Federal Rules of Criminal Procedure

24  affords Mr. Varnell protections of his Fifth and Sixth

25  Amendment rights.  And the issues that would have to be

1    litigated in such a hearing, first, would be the issue of the

2    fact that competence is a non-adversarial proceeding.  It's

3    ultimately a simple investigatory process to aid the Court.

4    The fact that the government claims some right to an equal

5    playing field has no bearing, and it's inapposite.

6        Secondly, it would have to be litigated as to the scope

7    of any disclosures and the future use of any material opinions

8    or evidence to the government.

9        Thirdly, it would have to be litigated, what the scope of

10   any competence evaluation would be allowed.  For example, what

11   testing was going to be performed, what use could be made of

12   that testing, and what use could be made of any information

13   gained or reports written from such an evaluation.

14       Fourth, whether or not the evaluation would be locally or

15   at a BOP facility would have to be litigated.  There is

16   nothing in the statute that gives the government access to

17   this defendant during the process.

18       Fifth, it would need to be litigated whether all forensic

19   interviews were to be audio and video recorded.

20       And these are just a few of the issues that would need to

21   be litigated in such a hearing if a further evaluation were to

22   be ordered.  But, like I have stated, I have no reason to

23   believe Mr. Varnell is not currently competent to assist me.

24   And the government has stated they don't believe he is

25   incompetent either except for their concerns about media

1   scrutiny, which they caused in the first place.

2        Also, as I have previously stated, nothing has been

3   proposed in regard to raising an insanity defense, which is an

4   entirely separate matter from what the government is asking.

5        And, finally, the government, according to their

6   Documents 21 and 22, seem to have a newfound concern for

7   Mr. Varnell's due process rights.

8        I would ask the Court to consider, where was their

9   concern for his due process rate -- rights when the government

10  gave their news conference about this fake bomb plot that they

11  conducted?  Where was their concern at their big news

12  conference they gave that they might be poisoning

13  Mr. Varnell's potential jury pool?

14       So I'm telling the Court their argument is disingenuous.

15       A few days ago I requested that I be allowed to view the

16  cargo van with all the fake materials, and I was given an

17  appointment to do so.  Although I was informed that it had

18  been partially disassembled.  The destruction of evidence is a

19  separate matter.

20            THE COURT:  Yeah.  Let's stay on point, counsel.

21            MS. COULTER:  Well, the point is the government's

22  arguments are disingenuous.  They are not cooperating ensuring

23  that Mr. Varnell gets his due process rights by allowing his

24  counsel to view evidence and have access to, for example, the

25  CI's criminal NIC printout.

1         It should be noted that Mr. Varnell's counsel has

2    received numerous calls from the press asking for interviews.

3    I have intentionally refused any such thing because it's in

4    my -- it's my duty to protect his due process rights.  And

5    that's exactly what I have done and that I am doing now.

6         So, bottom line, the government's due process arguments

7    are disingenuous and they have no -- they have no right to

8    have access to my client, your Honor.  And the Court has

9    received and I presume has reviewed in camera a very

10   well-written report that demonstrates all the testing that was

11   done and firmly establishes this man's competency.  And I am

12   ready to move on.  That's not an issue anymore.

13         THE COURT:  All right.

14   Mr. Dillon, do you have witnesses to call?

15         MR. DILLON:  As to this, no.  I would like to --

16         THE COURT:  Is this going to be all -- this is just

17   going to be all argument?

18         MR. DILLON:  As to this.  I would like to address a

19   couple of things Ms. Coulter -- but we do not have witnesses

20   as to this issue.

21         THE COURT:  Okay.

22   Ms. Coulter, will you have witnesses?

23         MS. COULTER:  No, sir.

24         THE COURT:  Okay.  All right.  I guess that's --

25   it's your turn then.

1          MR. DILLON:  Thank you, your Honor.

2     I do find it interesting that she keeps repeating due

3 process and forgets that the United States is a party to this

4 proceeding.  She keeps referring to this eminently qualified

5 expert and the fact that the report has only been reviewed in

6 an in camera fashion, and that is in no way a commentary on

7 anything that the Court has done at this point.  We are making

8 no comment that anything improper has happened.

9     But 4241 provides in no shape or fashion that that

10 proceeding is to be done nor does it allow for it to be done

11 in an ex parte fashion.  Yet that is exactly what she has

12 attempted to do is remove one of the parties to it.  In fact,

13 it provides that it's supposed to be for a neutral

14 court-appointed expert if an examination is to occur.  It is

15 not for an expert that is, say, designated in some other

16 fashion for a defense.  Nowhere have we alleged that this is

17 somehow for an insanity motive for anything else.  And we

18 haven't brought up any of these issues.

19     But, again, she wants to talk about press conferences

20 that were had or anything of that, I would only point to the

21 fact that the original motion that brought us here was not

22 filed under seal where there is allegations made concerning

23 the defendant's mental health.

24     Then here today she brings up an appointment to view part

25 of the evidence, a cargo van, which was only canceled because

1   of the rescheduling of this hearing and pleadings.  I only

2   bring that up because she brings up disingenuous arguments.

3   She knows where --

4        THE COURT:  You get to call her disingenuous once

5   and she's already called you disingenuous once.  So let's get

6   that over with and keep moving.

7        MR. DILLON:  I just -- I find it confusing in her

8   argument.

9        I think that there is a public interest to know and is

10  allowed by the rule -- and it doesn't happen very often -- for

11  the public to know that there was not a threat actually

12  occurring in this investigation.

13       As far as the actual issues that we're here for though,

14  again, 4241 does not provide for an ex parte proceeding.  It's

15  nowhere in that rule.  Her concerns to say that we would have

16  to later litigate how another evaluation would occur, I don't

17  actually see that that would actually need to be further

18  litigated because, fortunately, one, 4247 specifically

19  provides in Part (c) exactly what the report should include --

20  or who it should go to, rather.  The Rule 12.2 talks about in

21  Part (c)(4), the inadmissibility of the defendant's statements

22  and the limited circumstance that that would ever come in in

23  any other proceeding.

24       All of the concerns that Ms. Coulter has addressed with

25  the Court are already provided by statute.  The things that

1    are supposed to be included in a report back to the Court are

2    covered by statute.  I think that the issue of whether an

3    interview with the defendant in this proceeding would be

4    recorded -- or, I'm sorry -- in an interview would be

5    recorded, it might have been the *Loughner* case that I think

6    both parties are aware of through discussion -- I think that

7    that was actually addressed in that case.

8             THE COURT:  Is that the case that I sent you all?

9             MR. DILLON:  Yes.  So I don't see anything that

10   would need further litigation that has been brought up by

11   counsel today.

12        The public interest that is here, though, is to make sure

13   that there would not be a repetition in any proceeding, that

14   there is a full faith that there is competence in this

15   defendant, that this report that has been turned over, that

16   there is transparency going on, that both parties have faith

17   in it, that the public has faith, that everything has been

18   fully vetted, that there are no more concerns.

19        And while I can appreciate that Ms. Coulter says that she

20   is now satisfied, quite frankly, the government can't be

21   because we haven't been privy to anything.  And that is the

22   issue is that 4241 does not allow for this type of procedure.

23             THE COURT:  All right.

24        Ms. Coulter, I will give you the last word.

25             MS. COULTER:  Your Honor, the government has no

1    right to my work product.  The Court has an independent duty

2    to review a report of whether he's able to assist counsel

3    under the statute.  And competency is in itself a

4    non-adversarial issue, does not give the government rights to

5    my work product.  And, finally, the allegations concerning the

6    defendant's mental health were already in the public domain

7    before I ever filed anything.

8         That's it, Judge.  He is competent.

9         THE COURT:  This is not a hearing to determine

10   whether Mr. Varnell is competent to stand trial.  This is a

11   hearing to determine whether a competency hearing is needed.

12        Title 18 United States Code Section 4241 says if there is

13   reasonable cause -- remember that phrase -- reasonable cause

14   to believe that Mr. Varnell's presently suffering from a

15   mental disease or defect rendering him mentally incompetent to

16   the extent that he is unable to understand the nature and

17   consequences of these proceedings against him and to properly

18   assist in his defense -- I am looking for reasonable cause.

19        Now, if we ever get to a competency hearing the standard

20   is different.  It's preponderance of the evidence.  So what I

21   am trying to figure out here is whether there is reasonable

22   cause.  If I find it then I will order a psychological

23   examination of Mr. Varnell at a suitable facility.  That's

24   what the statute contemplates.  Once the examination is

25   complete and the reports are received, a competency hearing

1    will be held.

2         Now, this -- in my experience, this occurred in an

3    unusual way.  First defense files a motion under 4241.  And

4    4241 is very specific and it's a road map.  And you ring that

5    bell and we know what to do.  You order the psychological

6    evaluation by -- usually by the Bureau of Prisons.  And we

7    know what needs to be in the report.

8         But that's not what was intended by Ms. Coulter.  That

9    became apparent a few days later.  Sealed motions were filed,

10   approvals were given, and a psychological examination was

11   conducted.  This will probably never happen again because the

12   government is wise to it, but personally I think it was

13   pretty -- it's unusual the way this happened and quite clever

14   because you got your psychological evaluation.  I am not sure

15   you knew what the findings were going to be, but you got

16   findings that support the idea that your client is competent

17   to stand trial.

18        But I think more is needed here.  And let me explain why.

19   Mr. Varnell's -- let me get rid of the -- your motion to

20   withdraw your Document 10 is granted.  I know you don't want

21   this to be your motion for a competency examination, so that

22   motion is granted and you're allowed, Ms. Coulter, to withdraw

23   Document 10.

24        Now, as I read the statute -- again, I am at Title 18

25   United States Code Section 4241(a) -- there are three ways

1    that this can happen.  "This" being the ordering of the

2    psychological examination.  First and usually we get a joint

3    motion from the defense and from the government.  In this

4    case, we got one from the defense, which is now gone.  We got

5    one -- we now have one pending from the government.  But

6    failing that, the Court, on its own motion, can decide to

7    order a psychological evaluation.  But we do have a pending

8    motion from the government.

9        So when I consider Mr. Varnell's prior mental health

10   history, including hospitalizations, a diagnosis of

11   schizophrenia, auditory hallucinations, depression, anxiety,

12   mental health history that is serious enough that an Oklahoma

13   district judge has found you incompetent to manage your own

14   affairs resulting in your parents being appointed as your

15   guardian -- I understand that's a different standard, but it's

16   compelling.

17       The in camera -- in camera -- I am throwing around --

18   what "in camera" means is that the Judge gets to look at it

19   but nobody else.  That's what in camera examination of

20   documents mean.  So I did.  I thoroughly read the report, and

21   the report is compelling on the issue of competence.  And at a

22   later competency hearing I'm sure it's going to come up.  We

23   will probably argue about whether it needs to be disclosed to

24   the defense or not, but that's for another day.

25       But the psychological report prepared, though compelling

1    on the issue of competence, only presents a snapshot view of

2    Mr. Varnell's competence to stand trial.  It was based on a

3    two-hour examination at the Grady County Detention Center.

4    Hardly a suitable facility for such an examination.

5        Mr. Varnell deserves better.  He deserves -- and,

6    frankly, due process demands better for you.  You need a more

7    thorough study conducted over a period of weeks at a suitable

8    BOP facility specializing in cases such as yours.

9        So my ruling, based on the evidence presented, including

10   documents presented by the defendant and reviewed in camera by

11   the Court, and also the pretrial services report, the argument

12   of counsel, I find there is reasonable cause to believe that

13   Mr. Varnell is presently suffering from a mental disease or

14   defect rendering him mentally incompetent to the extent he is

15   unable to understand the nature and consequences of the

16   proceeding -- the proceedings against him or to properly

17   assist in his defense.

18       So plaintiffs -- the government's motion for hearing to

19   determine competency, ECF No. 22, is granted.

20       So it is ordered -- and I will follow this up with a

21   written order -- Mr. Varnell, you are committed to the custody

22   of the Attorney General for a reasonable period not to exceed

23   30 days -- my understanding is they are running a little

24   longer than 30 days; under the statute, it can be up to 45

25   days -- for an examination by at least one qualified

1    psychiatrist or psychologist to determine whether you may

2    presently be suffering from a mental disease or defect

3    rendering you mentally incompetent to the extent you are

4    unable to understand the nature and consequences of the

5    proceedings against you or to properly assist in your defense.

6         It's further required the examiner shall prepare and file

7    with the Court the reports prescribed in Title 18 United

8    States Code Section 4247(c).  And my order will reflect

9    exactly what's in the statute.

10         Counsel, if you want to argue about recordings, audio or

11   video recordings, just submit your request to me.  If my order

12   needs to be clarified in any way, let me know.

13         So -- Ms. Coulter?

14         MS. COULTER:  I am specifically making the request

15   that any interviews conducted be video and audio recorded.

16         THE COURT:  Any objection from the government?

17         MR. DILLON:  Only I think -- again, I think it was

18   pursuant to that *Loughner* case that I think that Court found

19   that if it's recorded it's provided to both parties.

20         THE COURT:  But you would probably like that

21   sentence in the order, wouldn't you?

22         MS. COULTER:  Yes, sir.

23         THE COURT:  All right.  We'll include it then, there

24   being no objection from the government.

25         Any clarifications to my order that you know about yet?

1          Ms. Coulter, anything else?

2              MS. COULTER:  Not yet, but I will study it.

3              THE COURT:  Yeah.  Let's -- let me -- I will get the

4     order to you today.

5              MS. COULTER:  If the Court could wait until Monday

6     to sign it, I would like an opportunity to do a little

7     research if I might.

8              THE COURT:  I am going to file it today because I

9     want -- I want to get the -- get things moving and get him out

10    of here and get him evaluated and get him back.  So --

11             MS. COULTER:  I will get right on it.

12             THE COURT:  Okay.  All right.  The -- obviously, we

13    cannot now have a preliminary hearing nor can we have a

14    detention hearing because we've got an issue as to

15    Mr. Varnell's competence.  So are there -- are there -- so

16    those hearings are canceled until further order of the Court.

17         Additional clarifications needed?

18             MR. DILLON:  No, your Honor.

19             THE COURT:  Or from the defense?  I know something

20    is coming but --

21             MS. COULTER:  Not at this time.

22             THE COURT:  -- not at this time.  All right.

23         We are in recess.

24             (Proceedings concluded at 1:35 p.m.)

25

1              CERTIFICATE OF OFFICIAL REPORTER

2    I, Christina L. Clark, Federal Official Realtime Court

3    Reporter, in and for the United States District Court for the

4    Western District of Oklahoma, do hereby certify that pursuant

5    to Section 753, Title 28, United States Code that the

6    foregoing is a true and correct transcript of the

7    stenographically reported proceedings held in the

8    above-entitled matter and that the transcript page format is

9    in conformance with the regulations of the Judicial Conference

10   of the United States.

11

12       Dated this 9th day of September, 2017.

13

14                           s/CHRISTINA L. CLARK_____
                             Christina L. Clark, RPR, CRR
15

16

17

18

19

20

21

22

23

24

25

CHRISTINA L. CLARK, RPR, CRR
United States Court Reporter
200 N.W. Fourth Street, Suite 5419
Oklahoma City, Oklahoma  73102
christina_clark@okwd.uscourts.gov - ph(405)609-5123