IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CR-17-239-D |
| JERRY DRAKE VARNELL, | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant's Motion to Compel Discovery [Doc. No. 155]. The United States has responded in opposition [Doc. No. 158], and Defendant has filed a reply [Doc. No. 162]. As set forth herein, the Court finds that the identities of John Doe and "Mike Smith" should not be disclosed at this time. However, the Court finds that an *in camera* hearing is necessary to determine whether the testimony of CHS-1 would lend significant credence to Defendant's defense and what efforts the United States has used to try to locate CHS-1.[1]

## FACTUAL BACKGROUND

Defendant was charged by a two-count superseding indictment on April 17, 2018[2], with one count of attempted use of an explosive device, in violation of 18 U.S.C. § 844(i),

---

[1] Defendant withdrew his request to compel the United States to provide contact information for Haley Hendell, Phelecia Murrison and Rhiannon Morrison in his reply brief [Doc. No. 162 at 1].

[2] Defendant was originally charged by a criminal complaint on August 13, 2017. [Doc. No. 1].

and one count of attempted use of a weapon of mass destruction, in violation of 18 U.S.C. § 2332a. [Doc. No. 121]. Count One carries a statutory minimum of five years' imprisonment and a statutory maximum of 20 years' imprisonment. Count Two carries a statutory maximum of life imprisonment. The superseding indictment alleges that on or about August 11, 2017 to August 12, 2017, Defendant attempted to use explosives to damage and destroy the BancFirst building at 101 N. Broadway in Oklahoma City. [Doc. 121]. Defendant's alleged involvement in the offense and significant details from the FBI's investigation are contained in the Affidavit in Support of Application for Complaint [Doc. No. 1].

For purposes of this Order, the Court notes the following pertinent facts[3]:

1) On December 21, 2016, CHS-1 (an FBI confidential human source) voluntarily provided to the FBI information that Defendant "was aspiring to bomb the Federal Reserve Building in Washington, D.C., in a manner similar to the Oklahoma City Bombing." [Doc. No. 1 at ¶ 4].

2) CHS-1 began cooperating with the United States in January 2017.

3) CHS-1 has a criminal history and was serving a prison sentence for a probation violation at the time of his agreement to cooperate.

---

[3] The Court relies on the information contained in the Affidavit in Support of Application for Complaint [Doc. No. 1], the Affidavit in Support of Application for Search Warrant [Doc. No. 104-1], the Affidavit in Support of an Application for a Search Warrant of Defendant's Facebook [Doc. No. 101-1], and the uncontested information provided by the United States and defense counsel in their pleadings.

4) CHS-1 was provided monetary compensation for his cooperation. [Doc. No. 1 at ¶ 4].

5) CHS-1 was responsible for 256 recorded accomplishments and was paid $23,050.00 for his services as a government informant.

6) CHS-1's involvement with Defendant appears to begin prior to December 21, 2016 and culminates on August 9, 2017.

7) Out of 23 paragraphs in the Affidavit in Support of Application for Complaint [Doc. No. 1], CHS-1 is referenced in ¶¶ 4-15, 18, and 21.

8) Out of 46 paragraphs in the Affidavit in Support of Application for Search Warrant [Doc. No. 104-1], CHS-1 is referenced in ¶¶ 4-16 and 19.

9) Out of 60 paragraphs in the Affidavit in Support of an Application for a Search Warrant of Defendant's Facebook [Doc. No. 101-1], CHS-1 is referenced in ¶¶ 6-17, 20 and 30.

10) CHS-1 communicated with Defendant via TextLock and Facebook and provided the FBI with screenshots of their conversations. Defendant indicated he was trying to build a team and was considering using the same explosives that the "OKC bomber used." [Doc. No. 1 at ¶ 5].

11) CHS-1 and Defendant had several meetings at Defendant's home in Sayre.

12) At the direction of the FBI, CHS-1 reported to Defendant that he knew of a person who had access to a large quantity of ammonium nitrate and experience in explosives.

13) On June 1, 2017, CHS-1 introduced the "professor" (an undercover FBI employee) to Defendant. Defendant agreed to have the "professor" obtain the explosives.

14) In December 2017, Brent Elisens[4] identified himself as the informant to *The Oklahoman,* and stated that he did not believe that Defendant would have followed through with the plot without encouragement, and that it was his job to keep Defendant's mind on the task at hand. [Doc. No. 162 at 12].

15) Mr. Elisens also made additional statements on Facebook and The Pyramid Group website that Defendant "had no resources, no materials, [and] no means to pull off" the fake bombing. *Id*. at 13.

16) Included in Defendant's reply brief are additional statements made by CHS-1 to Defendant that Defendant presents to support his entrapment defense. [Doc. No. 162].

17) John Doe, who was incarcerated at the Grady County Jail at the same time as Defendant, was interviewed by law enforcement on March 13, 2018.

18) "Mike Smith" befriended Defendant on Facebook on March 6, 2017, by commenting on a post by Defendant. Three days later, Mike Smith messaged Defendant and added a photo to Defendant's timeline. [Doc. No. 162 at 5].

19) On March 22, 2017, Mike Smith commented on a status update of Defendant. *Id.* at 6.

---

[4] Defendant, in his reply brief, suggests that Mr. Elisens is CHS-1. [Doc. No. 162 at 12, n. 5].

20) On June 29, 2017, Mike Smith sent the following message to Defendant: "short of political corruption, governmental abuse and legalized federal theft, how are things going for you today?" *Id*. at 10.

21) On July 4, 2017, Mike Smith gave his phone number to Defendant and told him to call if Defendant ever needed anything. *Id.* at 11.

22) On July 12, 2017, Mike Smith messaged Defendant and mentioned having access to a box truck. *Id.*

23) On July 20, 2017, Mike Smith messaged Defendant asking if he had any need for a box truck. Defendant did not respond. *Id.*

24) On July 31, 2017, Mike Smith messaged Defendant advising he was "stuck" with a box truck and was trying to sell or trade it off. *Id*. at 12.

## ANALYSIS

Under the "informer's privilege," the United States may withhold the identity of a person who furnishes information about violations of the law to law enforcement. *Roviaro v. United States*, 353 U.S. 53, 59 (1957). The privilege is designed to further and protect the public interest in effective law enforcement. *Id.* By preserving a person's anonymity, the privilege encourages citizens to communicate their knowledge of the commission of crimes to law enforcement. *Id.* The privilege, however, is not absolute. For instance, if the identity of the informant has been disclosed already to "those who would have cause to resent the communication, the privilege is no longer applicable." *Id.* at 60. Further, "[w]here the disclosure of an informant's identity, or … the contents of his communication,

is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61.

When the United States opposes disclosure of an informant's identity, the Court must balance "the public interest in protecting the flow of information against the [Defendant's] right to prepare his defense." *Id.* at 62. In balancing these interests, the Court should consider the crime charged, the possible significance of the informant's testimony, the possible defenses, and any other relevant factors. *Id.*

The defendant has the burden of demonstrating a need for disclosure. *United States v. Martinez*, 979 F.2d 1424, 1426 (10th Cir. 1992). The defendant "must present more than mere speculation about the possible usefulness of an informant's testimony." *United States v. Moralez*, 908 F.2d 565, 567 (10th Cir. 1990). If the informant's information is merely cumulative or the informant was not a participant in or a witness to the alleged crime, disclosure is not required. *Id.*

At one end of the spectrum, there are cases where the informant is a "mere tipster," and disclosure is not required. *Id.* at 568. At the other end are cases like *Roviaro* "where the informant has played a crucial role in the alleged criminal transaction, and disclosure and production of the informant are required to ensure a fair trial." *Id.*

To ensure proper application of the *Roviaro* test, the Tenth Circuit holds that an *in camera* hearing is appropriate for determining whether the informant's testimony would lend significant credence to a defendant's defense. *Gaines v. Hess*, 662 F.2d 1364, 1369

(10th Cir. 1981)[5]; *see also Moralez*, 908 F.2d at 569 ("an *in camera* hearing will best accommodate the competing governmental and individual interests in this case"). "Such a procedure will limit the extent of the disclosure of the informant's identity and information … while at the same time it will safeguard defendant's right to the testimony of any accessible witness who may be significantly helpful to his defense." *Gaines*, 662 F.2d at 1369.

In *Gaines*, the Tenth Circuit recognized that there may be times where the United States can no longer produce the informant. *Id.* In such a case, if the trial court were to conclude that the informant's testimony would be exculpatory for the defense, the court could issue a remedial order[6] to protect the defendant's due process rights. *Id.*

a. **John Doe**

The United States has not determined yet whether John Doe will be a witness at trial. Further, the United States asserts that John Doe's statements offer no exculpatory value and that Defendant has not met his burden to waive the informant's privilege. The Court agrees that Defendant has not met his burden with respect to John Doe.

---

[5] The Tenth Circuit in *Gaines* held that the disclosure of an informant's identity in situations like *Roviaro* is mandated by the Constitution. *Gaines*, 662 F.2d at 1368.

[6] It is unclear from *Gaines* what type of remedial order the Tenth Circuit envisioned. Although *Gaines* discusses an order that would require the prosecution to produce the informant at trial, other Tenth Circuit opinions establish that the United States only must use "reasonable efforts" to secure the attendance of an informant. *See e.g., United States v. Muse*, 708 F.2d 513, 514 (10th Cir. 1983).

The defense provides no information relating to the content of John Doe's potential testimony. It appears that John Doe was interviewed by law enforcement on March 13, 2018, and that he was incarcerated at the Grady County Jail at the same time as Defendant. Defendant argues that disclosure of John Doe's identity is critical at this juncture because the defense will need time to obtain impeachment information to use during cross-examination. Defendant points out that John Doe was prescribed certain medication while incarcerated at the jail, and that this is a factor that could affect his credibility. Defendant asserts that withholding such information until immediately prior to trial would disadvantage the defense in their ability to obtain impeachment evidence.

John Doe is not a witness to or a participant in Defendant's alleged crimes. Thus, he does not meet the circumstances described in *Roviaro*. He appears to be closer to the opposite end of the spectrum, i.e., a mere tipster, where disclosure is not required. Defendant must present more than mere speculation as to the usefulness of John Doe's potential testimony. *Moralez*, 908 F.2d at 567. Without more, the Court finds Defendant has not met his burden and disclosure of John Doe's identity is not warranted at this time. Should the United States decide to call John Doe as a witness at trial, the United States must disclose his identity to the defense at least 14 days prior to trial.

**b.    "Mike Smith"**

"Mike Smith" befriended Defendant on Facebook on March 6, 2017. The United States has since confirmed that Mike Smith is someone associated with law enforcement.

Currently, the United States does not anticipate calling Mike Smith as a witness at trial. Statements between Mike Smith and Defendant were provided in discovery.

Defendant asserts that discovering the identity and whereabouts of Mike Smith is critical to Defendant's presentation of his defense of entrapment. Essentially, Defendant argues that without Mike Smith and CHS-1 as witnesses at trial he will not be able to present his entrapment defense because the evidence rules prevent him from offering their hearsay statements. Defendant alleges that both Mike Smith and CHS-1 encouraged and persuaded Defendant to commit the alleged crimes.

While Mike Smith is a closer question than John Doe, the Court finds that the *Roviaro* criteria does not favor disclosure of Mike Smith's identity at this time. Unlike Roviaro, Mike Smith did not actively participate in the transaction which generated the charges. While Mike Smith messaged Defendant several times and offered him a box truck, Defendant never responded to Mike Smith's messages or comments. Without more, the Court finds Defendant has not met his burden. Should the United States decide to call Mike Smith as a witness at trial, the United States must disclose his identity to the defense at least 14 days before trial.

   c. **CHS-1**

With respect to CHS-1, the question before the Court is not disclosure because the defense appears to know the identity of the informant. The United States asserts that it does not have a current address for CHS-1. Although the United States is not the guarantor of an informant's presence at trial, the United States must use reasonable efforts to produce

an informant so that a defendant may interview him or use him as a witness at trial. *United States v. Muse*, 708 F.2d 513, 514 (10th Cir. 1983). It is unclear from the record what efforts the United States has exhausted to locate and produce the informant. Accordingly, the Court finds it necessary to conduct an *in camera* hearing to determine whether the testimony of CHS-1 would lend significant credence to Defendant's defense and what efforts the United States has used to attempt to locate CHS-1.[7]

**CONCLUSION**

As set forth above, the Court finds that the identities of John Doe and "Mike Smith" should not be disclosed at this time. Should the United States decide to call them as witnesses at trial, the United States must disclose their identities to the defense at least 14 days prior to trial. An *in camera* hearing is necessary to determine whether the testimony of CHS-1 would lend significant credence to Defendant's defense and what efforts the United States has used to try to locate CHS-1. The Court will set a hearing date by a separate minute order.

---

[7] The federal material witness statute, 18 U.S.C. § 3144, authorizes the Court to "order the arrest of [a] person" whose testimony "is material in a criminal proceeding … if it is shown that it may become impracticable to secure the presence of the person by subpoena." Material witnesses enjoy the same constitutional right to pretrial release as other federal detainees, and federal law requires their release if their testimony "can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice." 18 U.S.C. § 3144. Under the statute, either party can file an affidavit with the Court requesting the arrest and detention of a material witness. *See also Ashcroft v. Al-Kidd*, 563 U.S. 731, 733 (2011).

IT IS SO ORDERED this 12th day of September 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE