UNITED STATES DISTRICT COURT

IN THE WESTERN DISTRICT COURT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | 17-CR-239-D |
| | } | |
| JERRY DRAKE VARNELL, | } | |
| Defendant. | } | |

DEFENSE MOTION LIMINE
RE:  FORT RILEY BOMB TEST AND PRESENCE OF PERSONS

COMES NOW the defendant, Jerry Drake Varnell, respectfully asking the Court to exclude from evidence all government exhibits and testimony of government witnesses relating to the FBI's 1000-pound large vehicle bomb test (Fort Riley bomb test) conducted on August 30, 2017, as well as testimony regarding the number of hotel occupants present at the Oklahoma City Skirvin Hilton Hotel on August 11-12th, 2017.    Rule 401 provides the test for relevant evidence; Rule 403 sets forth that the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issue, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.   It is asserted that the anticipated evidence is not relevant to the case, but even if

deemed relevant, any probative value of said evidence would be substantially outweighed by multiple factors.  In support of this Motion, the defendant offers and states as follows:

The government has provided to the defendant notice of intent to introduce certain testimony under Rules 701, 702 and 703.   Included within the notice was specific information of the government's intent to call SA Black in place of or in addition to Forensic Examiner Travis D. McCrady of the FBI Explosives Unit.   The government noticed that SA Black was present and participated in a controlled preparation and detonation of a 1000 pound "Large Vehicle Bomb" on August 30, 2017, at Fort Riley, Kansas, to demonstrate the destructive effects of a 1000-pound large vehicle bomb on its surroundings.  The government has asserted in its notice that this large vehicle bomb that was detonated at Fort Riley on August 30, 2017 was designed in a similar manner to the vehicle born improvised explosive device (VBIED) that the defendant attempted to detonate.   Forensic Examiner Travis McCrady authored report Lab No. 2017-03418-2 regarding the findings of the testing.

Furthermore, in the notice, the government has advised that it may seek to elicit testimony from SA Black in place of or in addition to FBI Supervisory Intelligence Analyst Scott Sandersfeld.   Sandersfeld created

2

diagrams utilizing the data from the Lab No. 2017-03418-2 as well as information from the investigation.    The government has asserted that SA Black will testify to the damage that would have resulted had the defendant successfully detonated the VBIED, including the total destruction or loss of the BancFirst building in downtown Oklahoma City, Oklahoma, and that the damage from Defendant's VBIED would not encompass all of the areas in the rings presented on the diagram.

On April 2, 2018, SA Larsen reported that the Skirvin Hilton Hotel, located at 1 Park Avenue in Oklahoma City, has 34 hotel staff and associates, 246 overnight guests, and approximately 100 wedding party visitors, with a total number of persons in the hotel at 380 (approximately). While the government has not, nor is required, to provide notice of intent to introduce said evidence, it is anticipated by the defendant having received the report.

**The Fort Riley Bomb is Not Relevant to the Facts of this Case**

By definition, a "Vehicle-Born Improvised Explosive Device" (VBIED) is an improvised explosive device placed inside a car or other vehicle and then detonated.   However, what the defendant may have possessed *was not* an improvised explosive device.   Through discovery, the

government has provided to the defense the following information regarding

the *INERT MATERIALS* provided to Mr. Varnell:

A.  The INERT Materials

On June 26, 2017, over a month prior to the event planned by the

government, SA Black drafted handwritten instructions detailing how to

utilize a fusing system prepared for the investigation to be used during the

investigation. (Exhibit 1)

On August 1, 2017, law enforcement issued a "Law Enforcement

Operations Order" whereby law enforcement's "planned operation date" was

set to be August 12, 2017.   On that date, the Order provided that there

would be surveillance of delivery of an INERT VBIED to BANCFIRST by

Jerry Drake Varnell on 8/12/2017.   (Exhibit 2)   The plan further provided

that on August 12, 2017, FBI Agents and Task Force Officers of the

Oklahoma City Joint Terrorism Task Force would provide surveillance and

coverage on captioned subject as he picked up the INERT VBIED from a

storage facility in El Reno.  (Exhibit 2, page 282)

On August 10, 2017, it was reported by SA Black that he met with

UCE-6361 to discuss how the "*inert* explosive materials and an electronic

fusing/firing system provided for this investigation were designed to

function." (Emphasis added)   Handwritten instructions detailing how to arm

the device and fire it were also provided along with *inert* explosives described as four (4) Austin Powder cast boosters, four (4) Austin Powder Hornet 100 cast boosters, two (2) sticks of Atlas Gelmas dynamite, a match box containing two (2) inert Austin Powder electric detonators, and twenty (20) 50 pound bags of an inert ANFO simulant.  (Exhibit 3)

On August 12, 2017, the operation proceeded.   It is anticipated the government will present to the jury video evidence reflecting the defendant was picked up by the UCE, after having neither obtained nor contributed in any way to items to facilitate the building of a VBIED, even after constant and persistent urging to even come up with even the smallest of items such as bins or even gloves.   During the assembly process, the video will depict the UCE (utilizing the expertise given to him by SA Black) directing and coaching the assembling process, utilizing the inert materials all provided by the UCE.

On August 14, 2017, a press conference was held after the arrest of Mr. Varnell, wherein FBI Special Agent in Charge Raul Bujanda remarked that during the investigation, government agents were controlling the situation from beginning to end, there was never a threat to the citizens of Oklahoma and never a risk to the public.

On March 14, 2018, SA Black reported that the 1000 pounds of *simulated* ANFO that was utilized in the investigation was disposed of at that Oklahoma County Sheriff's range.  (Exhibit 4)(emphasis added)

According to Lab No. 2017-03418-2, the Explosives Unit provided the referenced substitute explosive materials for operation support in the case.   Forensic Examiner Travis McCrady reported that "substitute explosive materials are visually and physically consistent with authentic commercial explosive products *but do not contain live explosives*."   (Exhibit 5)(emphasis added)

### B.  The Fort Riley Bomb

To setup the test demonstration for August 30, 2017, items utilized consisted of one (1) 44 gallon plastic trash can, two (2) 32 gallon plastic trash cans, four (4) plastic storage bins filled with a total of 1000 pounds of ANFO, and was utilized using booster charges linked via detonating cord and two (2) detonators.    Simply stated, the explosive device constructed and exploded by FBI experts at Fort Riley was not constructed with similar materials provided for operation support and thus had no commonality or connection to the evidence in this case.    Regarding the test itself, The Lab No. 2017-03418-2 report states:

"This test was performed in an open air environment with limited witness material and provides a general demonstration of the destructive effects of a 1000 pound large vehicle bomb on its surroundings."

## ARGUMENT

Had Mr. Varnell himself obtained and/or possessed materials similar in nature (actual explosive materials that contained live explosives) to the items utilized in the demonstration, perhaps the demonstration of the 1000 bomb at Fort Riley would be relevant to show that he had made real efforts and/or attempts to acquire the components to assemble an actual VBIED, or had either the knowledge or means to do so.   However, it was the FBI that marshalled its explosive experts to first provide substitute explosive materials to Mr. Varnell, direct the assembly, and then a few weeks later the FBI constructed an actual bomb, set it off, and measured its effects. Knowing what materials to gather as well as assembling the materials clearly takes expertise, as evidenced through the SA Black giving directions to the UCE.   Unlike the FBI experts who provided the substitute explosive materials and also built the actual Fort Riley bomb, there is no anticipated evidence that has been provided through discovery that the defendant in this case possessed any knowledge of what materials to gather, nor how to assembly a device that in any way resembled the one exploded by the FBI at Fort Riley on August 20, 2017.

Any testimony regarding the bomb test, the accompanying photographs and video is neither relevant nor should be admissible at trial. Evidence is relevant only if it tends to make a fact more or less probable than it would be without the evidence and the fact is of consequence to determining the action.  While the Fort Riley bomb test would demonstrate that the government possesses the knowledge, component parts and capability to create a large explosion, it does nothing to establish that Mr. Varnell did.

In the Fort Riley bomb explosion, the government did not simply detonate a device possessed by the defendant (which would not have ever exploded) but centered on a device that contained different and obviously effect component parts that were not obtained by or possessed by or assembled by the defendant in this case.   In other words, the Fort Riley bomb test should be deemed not relevant or admissible in this trial, including interpretations and opinions contained within the report Lab No. 2017-03418-2, the photographs, video and testimony of the Fort Riley bomb test.

<u>Substantial Prejudice will Result if the Evidence is Presented</u>

Even assuming the Fort Riley bomb test might have some relevance as a demonstration of a bomb's explosive effects for purposes of sentencing, the probative value of the evidence from this this test would clearly be

substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.   The term "unfair prejudice" speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.   Here, the unfair prejudice is that the jury may hear testimony, see photographs and watch a video of a large explosion of a bomb built by FBI experts using highly effective components and be misled to believe that it is the same "destructive device" the defendant allegedly attempted to use as a "weapon of mass destruction."   A sampling of the images includes:



*Figure 19. Post-initiation screen capture of high-speed video showing thermal*
*Effe*
*ct*

and



The government's investigation as to the number of individuals located at the Oklahoma City Skirvin Hotel on August 12, 2017, is further anticipated to be presented to merely impassion the sympathies of the jury about something that never could have happened in this case:  the possible injury or death of 380 innocent individuals, in particular those celebrating the unity of marriage.   Again, Agent Bujanda assured the public that at no time were any people under threat or risk; to allow the jury to speculate as to what could or might have happened when there was no possibility of anything happening on August 12, 2017, would clearly be substantially prejudicial without relevance being provided.   Moreover, there simply is no

anticipated evidence that the defendant even knew a hotel was in the immediate area of the BancFirst building, nor any evidence that he had knowledge or anticipation that a wedding party would be taking place.

## Conclusion

The government seeks to introduce testimony about the destructive power of the FBI's bomb and what may have occurred if the materials provided to the defendant by the FBI had been real.   Mr. Varnell is charged with attempting to use a weapon of mass destruction that he never had or had the capability to build.   Showing the jury diagrams, photos and videos of an actual bomb exploding will demonstrate something that never could have happened in this case.  The defense asks the Court to exclude from trial all evidence relating to the Fort Riley bomb test and the presence of individuals in the area of attempted detonation.  Additionally, the Court should order the prosecution to instruct its expert witnesses not to mention the particular evidence or subject deemed inadmissible by the Court.

Respectfully submitted,

s/Marna Franklin
Marna Franklin, OBA #17148
Franklin Law Firm, P.C.
620 N. Robinson, Suite 203
Oklahoma City, Oklahoma 73102
Phone: (405) 239-2726
Fax: (405) 605-2284

11

mfranklin@demandproof.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of January, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing to:

Matthew Dillion, Mark R. Stoneman
Assistant U.S. Attorneys
210 West Park Avenue, Suite 400
Oklahoma City, OK  73102

s/Marna Franklin_____