# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CR-17-239-D ) |
| JERRY DRAKE VARNELL, | ) ) |
| Defendant. | ) ) |

## **ORDER**

Before the Court is Defendant's Motion in Limine Regarding the Fort Riley Bomb Test and Presence of Persons [Doc. No. 195], to which the United States objects [Doc. No. 202]. Defendant seeks to exclude at trial testimony and evidence relating to (1) a 1,000-pound vehicle bomb detonated on August 30, 2017, at Fort Riley, Kansas, by the FBI; and (2) testimony concerning the number of occupants present at The Skirvin Hilton Hotel in Oklahoma City, Oklahoma, on August 11-12, 2017.

Defendant contends that such evidence is irrelevant, or is substantially more prejudicial than probative. Relying on a Fourth Circuit case, the United States asserts that video evidence and testimony concerning the detonation test of a similar bomb by the FBI at Fort Riley is relevant to the question of whether Defendant intended his device to have destructive capability. The United States further asserts that the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice. Moreover, the United States contends that Defendant contemplated that people could lose their lives by the detonation of the device, and that the number of people present at the hotel across the street from the BancFirst building, the selected target, is relevant.

## BACKGROUND

Defendant is charged in a two-count superseding indictment. [Doc. No. 121]. Count One alleges that Defendant attempted to damage the BancFirst office building in downtown Oklahoma City, Oklahoma, by means of an explosive device on or about August 11-12, 2017, in violation of 18 U.S.C. § 844(i). *Id.* Count Two alleges that Defendant attempted to use a weapon of mass destruction, namely a destructive device as defined in 18 U.S.C. § 921, against any person and property at the BancFirst office building, in violation of 18 U.S.C. § 2332a. *Id.*

It is undisputed that the materials used to build the device at issue in Counts One and Two were provided to Defendant by the FBI as part of a sting operation.[1] Although FBI agents allegedly represented to Defendant during the assembly process that the materials used were explosives, the materials, in fact, were inert by design and incapable of exploding.[2] On August 14, 2017, a press conference was held following Defendant's arrest in which FBI ASAIC Raul Bujanda stated that agents were controlling the situation from beginning to end, and there was never any threat to the public.

---

[1] The materials included: a green ammunition can with 11 lengths of inert detonating cord; a green ammunition can with inert explosives described as four Austin Powder cast boosters, four Austin Powder Hornet 100 cast boosters, and two sticks of Atlas Gelmax dynamite; a match box containing two inert Austin Powder electric detonators; one fusing/firing system with separate jack plug; and twenty 50-pound bags of an inert ANFO simulant. [Doc. No. 195-3].

[2] "At the request of the FBI Oklahoma City Division, the Explosives Unit (EU) provided substitute explosive materials for operational support in FBI Case OC-2131945 …. Substitute explosive materials are visually and physically consistent with authentic commercial explosive products but do not contain live explosives." FBI Lab Report [Doc. No. 195-5].

The United States intends to call FBI Special Agent Barry Black to testify about his participation in a controlled detonation of a 1,000-pound vehicle bomb on August 30, 2017, at Fort Riley, Kansas. The Fort Riley bomb detonation was videotaped, and the United States intends to offer the video as evidence. SA Black will also testify to the damage that could have resulted had Defendant successfully detonated the vehicle-borne improvised explosive device. Defendant asserts, and the United States does not challenge, that the Fort Riley bomb was constructed using the following materials: one 44-gallon plastic trash can; two 32-gallon plastic trash cans; four plastic storage bins filled with 1,000 pounds of ANFO; booster charges linked via detonating cord; and two detonators. The Court has reviewed the video, which includes multiple depictions of the same test explosion from two different angles in real time and slow motion.

## DISCUSSION

**(1) Testimony and Video Concerning the Fort Riley Bomb Test**

The United States intends to offer evidence of the Fort Riley bomb detonation to show that Defendant here intended to create a destructive device. The United States relies on *United States v. Verna*, 113 F.3d 499 (4th Cir. 1997), for support that the video of the Fort Riley bomb detonation is relevant.

Verna constructed a homemade bomb, which he placed in the backseat of his ex-wife's car. *Id*. at 501. The bomb did not detonate because Verna mistakenly used two ignitors rather than one. *Id.* Verna was arrested and indicted for possession of a firearm (destructive device) by a convicted felon, in violation of 18 U.S.C. § 922(g), and possession

of an unregistered explosive device, in violation of 26 U.S.C. § 5861(d). *Id*. at 501-502. Verna was convicted by a jury of both counts. On appeal, Verna argued that the district court abused its discretion in admitting into evidence a videotape depicting the detonation of a laboratory-constructed bomb that was almost identical to the one he constructed. *Id*. at 503. Verna contended that the videotape was not relevant to proving whether his device was capable of detonation and destruction because a dysfunctional bomb is still considered a destructive device. *Id.* at 503.

The Fourth Circuit noted, however, that the "premise of Verna's argument" was "incorrect" because it is not clearly established in that circuit that a dysfunctional bomb is always a destructive device. *Id.* The court concluded the video was "directly relevant to the essential element of whether Verna's bomb was, and was intended to be, a destructive device," and had destructive capability, especially since Verna's bomb never actually detonated. *Id.*

The test detonation of a closely similar bomb at issue here is at least minimally relevant to matters the government must prove at trial. For instance, the government must establish that, with the requisite criminal intent, Defendant attempted to damage or destroy by fire or an explosive any building or other real or personal property affecting interstate commerce (*see* 18 U.S.C. § 844(i)). Thus, the destructive capability of a closely similar bomb arguably goes to what Defendant intended to accomplish, and whether the designed explosive device would have been capable of achieving those ends (if it had been fully operable).

The relevance of the Fort Riley test detonation does not, however, require the

4

admission of the video of the test.  Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice or cumulative evidence. FED. R. EVID. 403.  Indeed, the test video is not only cumulative in itself (it shows multiple depictions of the same detonation, both in real time and slow motion), it is also cumulative with SA Black's testimony regarding the same process.  Moreover, the video carries a significant danger of unfair prejudice – it would have an undue tendency to suggest a decision on an improper basis, specifically, an emotional one by arousing fear and a sense of horror in the jury.  A limiting instruction would not likely cure the prejudicial effect.[3]

Thus, the Court finds that the Fort Riley detonation test video should be excluded from evidence.  The Court will allow, however, in conjunction with SA Black's testimony, use of still photographs – in reasonable number – of the test detonation, if the government desires to do so.

### (2) Testimony About Occupancy at The Skirvin Hilton Hotel

The Court reserves its ruling regarding the number of hotel occupants present at the Oklahoma City Skirvin Hilton Hotel on August 11-12, 2017, and the nature of specific hotel uses at that time.  The Court is skeptical that, for instance, the United States would be able to show that Defendant knew there was a wedding party of 100 guests at the hotel

---

[3] The video depicts the detonation of a 1,000-pound bomb in an open field with vehicle props and human silhouettes in close proximity.  It shows the substantial force of the blast and flames engulfing the props and showering debris.  Although the Court acknowledges the relevance of the test detonation, the degree of relevance and probative value of the video depiction, and countervailing prejudicial effect, cannot be divorced from the reality that the bomb at issue in this case was incapable of detonation, was built using inert materials provided by the FBI, and the FBI was in total control of any attempted deployment such that no danger to the public existed.

on that date. The more relevant inquiry is whether Defendant knew that any person was inside the selected target, the BancFirst building. This speaks to the essential element of whether Defendant attempted to use a weapon of mass destruction against any person or property. The parties are cautioned to alert the Court prior to the presentation of such evidence so that a ruling can be made outside of the hearing of the jury.

## CONCLUSION

Based on the foregoing, the video of the test explosion is inadmissible. However, this does not mean that the Court will not allow a truncated presentation of still photographs along with descriptive testimony from the agents. Accordingly, Defendant's Motion in Limine Regarding the Fort Riley Bomb Test and Presence of Persons [Doc. No. 195] is GRANTED in part, DENIED in part, and RESERVED in part, as set forth herein.

**IT IS SO ORDERED** this 5th day of February 2019.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE