## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CR-239-D |
| | ) | |
| JERRY DRAKE VARNELL | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND BRIEF IN SUPORT

The defendant, Jerry Drake Varnell, through his attorneys of record, Marna Franklin and Vicki Zemp Behenna, moves this court to enter an order of judgment of acquittal on all Counts, pursuant to Federal Rule of Criminal Procedure 29, on the grounds that no reasonable jury could have found that the government met its burden to prove beyond a reasonable doubt that it did not entrap Mr. Varnell.  Furthermore, the evidence presented at trial demonstrated that the government was excessively involved in the creation of the crime and is therefore insufficient to sustain a conviction.

## BACKGROUND

On February 4, 2019, Mr. Varnell moved to dismiss the Superseding Indictment on the grounds that the government's conduct during the course of the investigation was so outrageous that the government was constitutionally barred from prosecuting the offenses developed through that conduct ("Motion to Dismiss").  [Doc. No. 212]  On February 11,

2019, the Court reserved its ruling on that motion until after the close of the government's case in chief.  [Doc. No. 225]

On February 21, 2019, at the close of the government's case in chief, Mr. Varnell renewed his motion.  The Court denied the motion, finding that Mr. Varnell's speech prior to the government's involvement constituted a crime under 18 U.S.C. § 844(e) and, therefore, the outrageous conduct defense is not available to him.

On February 25, 2019, Mr. Varnell was convicted on both Counts.

## ARGUMENT

When determining whether to grant a motion for judgment of acquittal, the court "must view the evidence, both direct and circumstantial, in the light most favorable to the government, and without weighing conflicting evidence or considering the credibility of the witnesses, determine whether that evidence, if believed, would establish each element of the crime."  *U.S. v. Brown*, 50 Fed.Appx. 970, 976 (10th Cir. 2002).  The evidence presented at trial, when viewed in the light most favorable to the government, demonstrated that the government did not meet its burden to prove beyond a reasonable doubt that Mr. Varnell was not entrapped.  No reasonable jury could have found otherwise.  Moreover, the government's conduct was so outrageous that it should have been barred from prosecuting the offenses developed through that conduct.

## I.      Mr. Varnell's Conviction was the Result of Outrageous Government Conduct

The Tenth Circuit has held that a defendant asserting the outrageous government conduct defense "bears the burden of proving either: (1) excessive government involvement in the creation of the crime, or (2) significant governmental coercion to induce

the crime." *U.S. v. Dyke*, 718 F.3d 1282, 1287 (10th Cir. 2013).  While there is no bright-line test to determine the precise point at which the government's involvement in the creation of the crime becomes excessive, there are some guiding principles that have emerged.  For example, courts have held that the government is permitted to infiltrate an ongoing criminal enterprise, and may even induce a suspect to repeat, continue, or expand criminal activity.  *Id*. at 1288.  However, where the government "generates new crime for the purpose of prosecuting it or induces a defendant to become involved for the first time in certain criminal activity, as opposed to merely interposing itself in an ongoing criminal enterprise, such conduct has occasionally been held to be outrageous."  *Id*.  In those circumstances, the government "should not be allowed to invoke the judicial system in connection with [the] case, and the charges against [the defendant] should be dismissed." *U.S. v. Mosley*, 965 F.2d 906, 908 (10th Cir. 1992).

### A. Mr. Varnell was Not Engaged in Criminal Activity Prior to the Government's Involvement

This Court previously determined that the government did not induce Mr. Varnell to become involved in criminal activity for the first time because Mr. Varnell was already engaged in criminal activity when the government inserted itself into his conversations. Specifically, the Court held that Mr. Varnell's speech prior to the government's involvement violated 18 U.S.C. § 844(e), which prohibits any person from "willfully mak[ing] any threat . . . concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive."

However, any statute prohibiting speech based on its content "must be interpreted with the commands of the First Amendment clearly in mind." *U.S. v. Heineman*, 767 F.3d 970 (10th Cir. 2014). Therefore, in order to avoid any conflict with the First Amendment, courts have interpreted § 844(e) as prohibiting only "true threats," which "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *See U.S. v .Viefhaus*, 168 F.3d 392, 395-96 (10th Cir. 1999) (construing § 844(e) to require proof of a true threat); *U.S. v. Spruill*, 118 F.3d 221 (4th Cir. 1997) (finding that § 844(e) "proscribes only true threats). *And see Virginia v. Black*, 538 U.S. 343, 358 (2003) (defining true threats).

In order to find that speech constitutes a "true threat," and therefore violates § 844(e), this court must find that the speaker intended the recipient of his speech to feel threatened. *See U.S. v. Heineman*, 767 F.3d 970 (10th Cir. 2014) ("Thus, we are facing a question of first impression in this circuit: Does the First Amendment, as construed in *Black*, require the government to prove *in any true threat prosecution* that the defendant intended the recipient to feel threatened? We conclude that it does.") (emphasis added). *And see U.S. v. Pettaway*, 297 F.Supp.3d 137 (D.C. Cir. 2018) (finding that the government must prove that the defendant acted with an intent to instill fear of violence in order to secure a conviction under § 844(e)). This is true regardless of the fact that § 844(e) does not contain an express *mens rea* requirement. *See Elonis v. U.S.*, 135 S.Ct. 2001, 2010 (2015) (finding that, when interpreting federal criminal statutes that are silent on the required mental state, the court must read into the statute the *mens rea* necessary to separate

wrongful conduct from otherwise innocent conduct).  *And see Heineman*, 767 F.3d at 973 (finding that the court must "read into [the statute] any scienter necessary to satisfy the demands of the First Amendment").  Therefore, in order to find that Mr. Varnell violated § 844(e), this Court must find not only that he intended to communicate threatening words, but that he *intended the recipient of his speech to feel threatened.*  He did not.

### B. Mr. Varnell Did Not Intend the Recipient of His Speech to Feel Threatened Because His Speech was Directed at Like-Minded Believers

In *Virginia v. Black*, the Supreme Court considered the constitutionality of a Virginia statute prohibiting individuals from burning crosses with an intent to intimidate. Importantly, the statute contained a provision stating that "any such burning of a cross shall be prima facie evidence of an intent to intimidate a person or group of persons."  *Black*, 538 U.S. at 363.  The Court held that, while the state was permitted to ban cross-burning carried out with an intent to intimidate, the prima facie evidence provision rendered the statute unconstitutional because it impermissibly assumed that all cross-burning is done with the intent to intimidate.  *Id.* at 365-66 ("[T]he provision chills constitutionally protected political speech because of the possibility that the Commonwealth will prosecute—and potentially convict—somebody engaging only in lawful political speech at the core of what the First Amendment is designed to protect.").

In its analysis, the Court stressed the importance of the context within which the speech was made for purposes of determining whether the speaker intended to make a true threat.  The Court indicated that the exact same speech taken in two different contexts could be considered criminal in one but protected in the other.  For example, speech might be

criminal when directed at an individual but protected when directed at a group of like-minded believers. Specifically, the statute in that case was found unconstitutional because:

> [It] makes no effort to distinguish among these different types of cross burnings. It does not distinguish between a cross burning done with the purpose of creating anger or resentment and a cross burning done with the purpose of threatening or intimidating a victim. It does not distinguish between a cross burning at a public rally or a cross burning on a neighbor's lawn. ***It does not treat the cross burning directed at an individual differently from the cross burning directed at a group of like-minded believers.***

*Id*. at 366.

Just as an individual burning a cross at a public rally does not intend to threaten or intimidate a victim, Mr. Varnell *did not* intend to threaten or intimidate anyone when he sent messages to a group that he reasonably believed to be made up of like-minded individuals, one of whom was previously convicted for threatening to blow up the Norman Police Department.[1] Rather than trying to intimidate anyone, it seems far more likely that Mr. Varnell was trying to *impress* the people he was communicating with. Had Mr. Varnell intended to make anyone feel threatened by his statements, he certainly would have chosen a different audience. Because Mr. Varnell lacked the requisite intent to instill fear in the recipients of his speech, this Court should find that he did not make a "true threat" in violation of § 844(e) and had therefore *not* engaged in criminal activity prior to the government's involvement.

---

[1] Brent Elisens was convicted on February 23, 2011 for using a telephone to communicate a bomb threat against the Norman Police Department.

**C. The Government Manufactured the Crimes for Which Mr. Varnell was Convicted**

The evidence presented at trial demonstrated that, prior to the government's involvement, Mr. Varnell had no plans to carry out an attack, nor did he have the means to do so.  In *U.S. v. Batres-Santolino*, 521 F.Supp. 744, 752 (N.D.Ca. 1981), the Northern District of California upheld the outrageous government conduct defense where the defendants, "although not without some culpability, … were not embarked or about to embark on any criminal activity until the government's agent set in motion the operation." In that case, the court found that the "government agents manufactured a crime that . . . could not and would not have been committed if [the undercover agent] had not inveigled defendants into it and offered to provide them an otherwise unavailable source of supply of the illegal drug they were to import." *Id.* at 751.  *See also U.S. v. Twigg*, 588 F.2d 373, 379 (3d Cir. 1978) (finding outrageous government conduct where the government purchased the indispensable ingredient, provided an 'isolated farmhouse well-suited for the location of an illegally operated laboratory," and was "completely in charge and furnished all of the laboratory expertise").  As in other cases where outrageous conduct has been found, the government in this case created the plan, set it in motion, and was in *total control* from start to finish.

Despite the government's carefully-crafted narrative that Mr. Varnell was a threat that demanded the FBI's full attention, Mr. Varnell was not a threat to anyone until the government made him one.  The FBI itself made that determination on February 10, 2017, when it found that Mr. Varnell "does not have a job or a vehicle" and "does not appear to

have the means to actually commit this act."  Undeterred, the government set out to build a case against him using a combination of tactics that, when viewed with an appreciation of the totality of the circumstances[2], amounts to the "shocking, outrageous, and clearly intolerable conduct" first contemplated by the Supreme Court in *U.S. v. Russell*, 411 U.S. 423, 432 (1973).

The government contends that Mr. Varnell was actively looking for people to assist him and that the undercover agent "merely stepped in to be that assistant."  [Doc. 218] However, the evidence shows that Mr. Varnell was a participant in a plan created by the government—not the other way around.  The government arranged and directed the entire crime, starting on April 24, 2017, when Brent Elisens told Mr. Varnell that he knew a guy with access to large quantities of ammonium nitrate fuel oil ("ANFO").  On June 26, 2017, the undercover agent met with Mr. Varnell and assigned him the tasks of obtaining a box truck, burner phone, and barrels, and picking a date and location.  The agent *repeatedly* inquired about the status of these tasks and each time he received either no response or an excuse as to why they had not been completed.[3]  Mr. Varnell failed to complete *any* of the

---

[2] *Dyke*, 718 F.3d 1289 ("[W]hat qualifies as outrageous government conduct depends on an appreciation of the totality of the circumstances.").

[3]

|  | Undercover Agent | Mr. Varnell |
|---|---|---|
| June 19, 2017 | Going to be in OKC this weekend to see my girl.  You around Monday to meet up? | I'm not sure, I'll let you know in a couple of days.  [doesn't follow up] |
| July 20, 2017 | You make any progress with what we talked about? | Working on it.  Might have something by next week. |
| July 25, 2017 | Any thoughts on a date? | [No response] |
| July 28, 2017 | What do you think of Friday, August 11 for the date? | [No response] |
| July 29, 2017 | Bubba, you getting my messages? | Ya sorry just haven't come up with anything |

tasks to which he had been assigned and ultimately contributed very little to the operation. *See Twigg*, 588 F.2d 373 (3d Cir. 1978) (finding outrageous government conduct where the government was in complete control and received only minor assistance from the defendant). The only items that Mr. Varnell eventually supplied to create the bomb were electrical tape and latex gloves, which he obtained (1) at the direction of the agent, (2) with money given to him by the agent, and (3) after being driven to Wal-Mart by the agent.

Tellingly, Mr. Varnell *could have* contributed more but chose not to. When Mr. Varnell was presented with multiple opportunities, concocted by the government, to obtain a box truck from another "friend" free of charge, he did not take his friend up on the offer. The informant later told Mr. Varnell that he could get a van for $500, but when Mr. Varnell

| July 30, 2017 | I still you need you to get containers. Garbage cans, plastic totes, barrels, doesn't matter what, just a couple of them. 50 to 10 probably. Assuming we can make that happen, what do you think of that date, August 11? | Sounds good |
| August 3, 2017 | Hey man what's the story with the vehicle and containers? | [No response] |
| August 4, 2017 | Hey man we should probably talk sometime soon about next week. I can call you tomorrow if you're around. | I'm going to be building fence all day tomorrow. |
| August 6, 2017 | I'm going to call you tomorrow and talk about the schedule | ok |
| August 7, 2017 | [attempted call, no answer] | showering call you back in 20 [never called] |
| August 8, 2017 | I'm in between something [b]ut call when you can. If I cannot answer will call u asap | [No response] |
| August 8, 2017 | Let me know when you can talk | [No response] |
| August 10, 2017 | Do you have what we discussed for the vehicle | Can't find anything to use |
| August 11, 2017 | Got electrical tape? | No I don't have any. Sorry just got out of school. |
| August 11, 2017 | You have latex gloves? | I couldn't find mine. |

did not come up with the money, the informant told him that the $500 was "forgiven." Likewise, Mr. Varnell had several barrels at his home that he could have easily contributed but did not because then he "would have to find some more for [his] house," so the government supplied those as well. Even the date was eventually chosen by the undercover agent after multiple attempts to get Mr. Varnell to pick one. The government, tired of waiting for Mr. Varnell to act on his own accord (and likely knowing he wouldn't), solved every excuse he had and did so at no cost to him. When analyzing the outrageousness of the government's conduct, case law instructs courts to look at how "eagerly and actively the defendant himself participated in the current crime charged," stating that it is "an important and decisive factor." *Dyke*, 718 F.3d at 1289. Mr. Varnell's interactions (or lack thereof) with the agent in the weeks leading up to August 11, 2017, clearly demonstrate that he was not an eager participant at all.

The government's pattern of solving Mr. Varnell's problems continued right up until August 11, 2017, when the agent helped Mr. Varnell build the bomb and then gave him the keys to the van. Mr. Varnell, who was clearly surprised, gave the keys back and told the agent "I don't need those, I don't wanna drive, I can't drive. … I don't have a license dude. … I can't drive dude." The agent responded by saying, "I mean, I don't know what to tell ya. I'm not driving it. … I thought you understood that was the deal. … I thought you understood that's what was going on." As the agent pointed out, Mr. Varnell was "about to place a thousand-pound bomb somewhere" but was "worried about a traffic violation." Eventually, the agent offered one final solution: he would follow Mr. Varnell and if somebody started to pull him over, the agent would "blow past them" and have them

pull him over instead.  The government asserts that "Mr. Varnell remained the driver of his own plan" [Doc. 218] yet, in reality, Mr. Varnell couldn't even drive a car without the government's assistance.

In addition to eliminating every excuse Mr. Varnell came up, the government used Brent Elisens, an individual with a dominant and narcissistic personality, to pressure him into acting when it was clear he was reluctant to do so.  Mr. Varnell's interactions with Elisens plainly demonstrate the substantial amount of pressure exerted by the government.[4]

---

[4]

| | Brent Elisens | Mr. Varnell |
|---|---|---|
| July 26, 2017 | did you die? | [No response] |
| July 29, 2017 | dud wtf is going on? | What you mean? |
| August 2, 2017 | HOW AM I SUPPOSED TO SEND OUT YOUR MESSAGE IF YOU DON'T GIVE IT TO ME [EXPLETIVE] | [No response] |
| August 3, 2017 | what the [expletive]?<br><br>wtf are you doing<br><br>you're ok though?  [expletive] had me nervous<br><br>alright well it's getting close | Sup<br><br>My phones been off bro<br><br>ya I'm good |
| August 4, 2017 | you're really REALLY starting to make me worry<br><br>This is big [expletive] and we have to make sure we're all on the same page step by step.  If I'm to help I need to be on point.  So YOU explain [expletive] lol<br><br>Care to share? | what [expletive]? lol<br><br>I've been mulling some stuff over.  Don't rush me lol<br><br>[No response] |
| August 8, 2017 | [on phone, Elisens tells Varnell he has access to van<br><br>Elisens tells Varnell that he needs to "follow through" because his word is on the line] | sounds good, I guess. Whatever works |
| August 9, 2017 | [after 3 unanswered calls]<br>What are you up to man?  You know I would uh definitely appreciate it if uh you could pick up your cellular device and open the phone app and then dial the ten-digits that will connect you directly to my cell phone.  Like, you do that I can pick up and talk, it's amazing, it's amazing, try it bro | |

Finally, even if Mr. Varnell had concocted the plan on his own, he was powerless to carry it out. Most critically, the government supplied the key ingredient—1,000 pounds ANFO—a substance which would have been nearly impossible for him to obtain on his own.[5] The government also supplied the expertise needed to carry out the plan because, despite his claims of minoring in chemistry because "[b]ombs are cheaper than bullets," Mr. Varnell *did not know how to build the bomb*, a fact that became abundantly clear as the agent painstakingly walked him through the process step by step. Mr. Varnell did not

| August 9, 2017 | [after Mr. Varnell tells him he can't meet because he feels "like 10 pounds of doodie in a one pound sack"] So your doodie is more important than everyone's freedom? Tomorrow better? | [No response] |
|---|---|---|
| August 9, 2017 | [on phone] You know it's crunch time | Yeah |
| | Where we at? Man, like, I got, I got the script ready I need that message … [tells him he needs to come up with something like cash or drugs for the van] we need the barrels dude | Yeah |
| August 9, 2017 | [on phone] Like, um I'm get, I'm getting uh uh a feeling from you man like I'm kind of feeling like you're being wishy washy and like I need to make sure that it's on Friday. Alright, well this this is a as you know this is a, this is a very, very, very big big thing, you know, and I I'm pretty, I'm pretty sure that those problems are kind of trivial compared to ones we got going on, so, I I'm doing my end but I need to make sure that Friday is official, ok? | Yeah, well uh, I'm I'm gonna be good by Friday |
| | You'll be good by Friday? | Yeah |
| | Ok, that makes me feel a little bit better man, I appreciate that | |
| August 10, 2017 | I'm impressed you're taking your plan to the follow through… I didn't think you would. I'm very impressed. | I do what I does |
| August 10, 2017 | [in reference to money for van] I'm not impressed and I'm starting to get nervous. I look up to you and we're doing your plan to the T, now you have a fever and go to learn to slave over money as you say…our freedom isn't worth $500? | [Expletive] I ain't got no money. At all. |

[5] Barry Black, the government's bomb expert, testified at trial that Mr. Varnell would have needed a permit to purchase ANFO, as required by 27 C.F.R. § 555.41

know what the boosters were, did not know that the van was "going with it," and incorrectly attached wires, even after the agent told him how.

### D. Mr. Varnell's Mental Health Should Be Considered when Evaluating the Outrageousness of the Government's Conduct

The Tenth Circuit has held that the outrageousness of the government's conduct "depends in part on who the government is dealing with." *Dyke*, 718 F.3d at 1289. While the Tenth Circuit has found that certain tactics might be *less* outrageous when used against someone who is predisposed to commit a crime, the opposite should be true as well. Specifically, the fact that Mr. Varnell is a diagnosed schizophrenic should make the government's conduct in this case even more outrageous than it would be if the defendant was not mentally ill. To be clear, Mr. Varnell does not argue, as the government previously asserted, that all persons living with schizophrenia should be immune from investigation. However, the fact that Mr. Varnell is schizophrenic should at least be a *factor* this Court considers when determining the outrageousness of the government's conduct. *See U.S. v. Harris*, 997 F.2d 812, 816 (10th Cir. 1993) (taking into consideration whether the defendant was a known addict for purposes of determining whether the government's distribution of narcotics to defendant was outrageous). For example, the fact that the informant—Elisens—repeatedly brought marijuana with him to Mr. Varnell's home might not ordinarily be considered outrageous; however, the level of outrageousness rises when taking into account the fact that marijuana was given to a person that the government knew was schizophrenic and taking anti-psychotic medication.

## CONCLUSION

As the government correctly noted, many of the tactics used by the government have been described by courts as "pretty prosaic stuff for undercover sting operations." [Doc. 218 ] Standing alone, it is unlikely that any of the tactics employed here would amount to outrageous government conduct. However, the Tenth Circuit has held that "what qualifies as outrageous government conduct depends on an appreciation of the totality of the circumstances." *Dyke*, 718 F.3d at 1289. The totality of the circumstances in this case reveals a coercive cocktail of tactics that the government utilized to exploit a mentally ill individual for the sole purpose of obtaining a conviction. Mr. Varnell was not engaged in criminal activity prior to the government's involvement, had no plans to carry out an attack, and completely lacked the resources and the knowledge to do so. The government did not infiltrate an ongoing criminal enterprise, within the bounds of permissible investigative tactics, because there *was no enterprise to infiltrate*. Rather, it manufactured a new crime and induced Mr. Varnell to commit the acts for which he was convicted.

It is well-recognized that the outrageous government conduct defense is available only in the most egregious circumstances—those that are "shocking, outrageous, and clearly intolerable." *Russell*, 411 U.S. at 432. The stringent nature of the outrageous government conduct defense is demonstrated by the fact that in only a handful of cases where the defense has been raised have the charges been dismissed. However, the Tenth Circuit has expressly declined to close the door on the defense, placing itself firmly in the "never say never" camp. *Dyke*, 718 F.3d at 1287. By doing so, the court made clear that there could very well be a time when the government's conduct warrants dismissal. This

14

is such a case.  Accordingly, Mr. Varnell respectfully requests this Court enter an order of

judgment on acquittal.

Respectfully submitted,


/s/ Vicki Zemp Behenna
Vicki Zemp Behenna, OBA #10734
MULINIX, GOERKE & MEYER, PLLC
210 Park Avenue, Suite 3030
Oklahoma City, OK 73102-8005
Telephone: 405-232-3800
Facsimile:   405-232-8999
Email:  vzb@lawokc.com
and
Marna Franklin, OBA 17148
Franklin Law Firm, P.C.
620 N. Robinson Avenue, Suite 203
Oklahoma City, OK  73102
Telephone:  405-239-2726
Facsimile:  405-605-2284
mfranklin@demandproof.com

*Attorney for Defendant,*
*Jerry Drake Varnell*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of March, 2019, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing, which will automatically send e-mail notification of such filing to all attorneys of record.

/s/ Vicki Zemp Behenna
Vicki Zemp Behenna
