#### IN THE UNITED STATES DISTRICT COURT FOR THE
#### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-CR-239-D |
| | ) | |
| JERRY DRAKE VARNELL | ) | |
| | ) | |
| Defendant. | ) | |

#### DEFENDANT'S REPLY TO
#### GOVERNMENT'S RESPONSE TO DEFENDANT'S
#### MOTION FOR JUDGMENT OF ACQUITTAL

The defendant, Jerry Drake Varnell, through his attorneys of record, Marna Franklin and Vicki Zemp Behenna, previously moved this court to enter an order of judgment of acquittal on all Counts, pursuant to Federal Rule of Criminal Procedure 29. The government's response to that motion contains several points that merit discussion.

**I.   Mr. Varnell's Statements Were Not True Threats, in Violation of 18 U.S.C. § 844(e)**

Mr. Varnell's motion asserts that his statements were not true threats, in violation of 18 U.S.C. § 844(e), because they were directed at "like-minded believers" and thus not made with an intent to threaten.[1]  In response, the government states that the Tenth Circuit

---

[1] The government also states that Mr. Varnell argues his statements did not constitute true threats "because . . . he did not have the means to carry out his threats." [Doc. 249 at 10] This is a mischaracterization of Mr. Varnell's argument. While Mr. Varnell does state that he neither intended to carry out his alleged "threats," nor had the means to do so, he does so *not* in reference to whether his statements constituted true threats, but in reference to the extent of the government's involvement in the creation of the crime. [Doc. 247 at 7]  These

"has not required that true threats be made directly to the proposed victim." [Doc. 249 at 11] Mr. Varnell does not argue that it has. However, the Supreme Court *has* required that the speaker of the threat intend the recipient to feel threatened, or at least know that the communication will be viewed as a threat. *See Elonis v. U.S.*, 135 S.Ct. 2001, 2004 (2015).

Despite this, the government argues that *Elonis* does not impose a specific intent requirement. [Doc. 249 at 10] In support of its proposition, the government cites *U.S. v. Lynch*, 2018 WL 706491 (10th Cir. 2018), which addresses the intent required under 49 U.S.C. § 46504.[2] The government's reliance on *Lynch* is improper for several reasons. First, 49 U.S.C. § 46504 is not a true threat crime. *See U.S. v. Petras*, 879 F.3d 155, 165 (5th Cir. 2018) (finding that the Supreme Court's holding in *Virginia v. Black*, 538 U.S. 343 (2003), did not apply to § 46504 because *Black* "only established the kind of 'intimidation' that constitutes a 'true threat,'" and "said nothing about the constitutionality of laws that criminalize a broader sense of intimidation"). 18 U.S.C. § 844(e), on the other hand, *is* a true threat crime. *See U.S. v. Viefhaus*, 168 F.3d 392, 395-96 (10th Cir. 1999) (construing § 844(e) to require proof of a true threat); *U.S. v. Spruill*, 118 F.3d 221 (4th

---

are two distinct concepts that should not be conflated. Therefore, the government's analysis on this point is misleading and inapplicable.

[2] 49 U.S.C. § 46504 states:

> An individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined under title 18, imprisoned for not more than 20 years, or both.

Cir. 1997) (finding that § 844(e) "proscribes only true threats"). This is important because, as the *Lynch* court explained, *Elonis* requires a court to "read into the statute only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct." *Lynch*, 881 F.3d 812, 816 (citing *Elonis*, 135 S.Ct. at 2010). 49 U.S.C. § 46504 is a "content-neutral prohibition" and, therefore, the *Lynch* court found that general intent satisfies the *Elonis* requirement when that statute is at issue. *Lynch*, 881 F.3d at 818. However, in the context of a true threat crime, such as 18 U.S.C. § 844(e), the "crucial element separating legal innocence from wrongful conduct is the threatening nature of the communication" and, therefore, "the mental state requirement must apply to the fact that the communication contains a threat." *Elonis*, 135 S.Ct. at 2003. Contrary to the government's argument, the Tenth Circuit actually held in *U.S. v. Twitty*, 641 Fed.Appx. 801 (10th Cir. 2016) that *Elonis does* impose a subjective intent element for making threatening communications. *See Twitty*, 641 Fed.Appx. at 805-6 (addressing violations of 18 U.S.C. § 876(c)—a true threat crime—and noting the importance of First Amendment concerns in true threat cases). As the *Elonis* court explained, "[h]aving liability turn on whether a 'reasonable person' regards the communication as a threat—regardless of what the defendant thinks—reduces culpability on the all-important element of the crime to negligence, and [the Court has] long been reluctant to infer that a negligence standard was intended in criminal statutes." *Elonis*, 135 S.Ct. at 2011. Thus, "what [the defendant] thinks does matter." *Id*.

More importantly, however, the government's assertion that specific intent is not required ignores the binding precedent set by the Tenth Circuit in *Heineman*, in which it

specifically held that "the First Amendment, as construed in *Black*, require[s] the government to prove in any true-threat prosecution *that the defendant intended the recipient to feel threatened[.]*"[3] 767 F.3d at 975.  *See also U.S. v. Pettaway*, 297 F.Supp.3d 137 (D.C. Cir. 2018) (finding that the government must prove that the defendant acted with an intent to instill fear of violence in order to secure a conviction under 18 U.S.C. § 844(e)).

Finally, the fact that Mr. Elisens ultimately testified that he did not share Mr. Varnell's beliefs (i.e., was not a like-minded believer) is *of no consequence whatsoever* where Mr. Elisens consistently and continuously represented to Mr. Varnell that he did. Any reasonable person in Mr. Varnell's shoes would have thought that Mr. Elisens was like-minded; what Mr. Elisens actually believed is irrelevant. Mr. Varnell's reasonable belief that he was speaking to a like-minded individual is a clear indication that he lacked the necessary intent to make the recipient of his speech feel threatened, an element that *must* be present in order to find that a true threat has been made, in violation of 18 U.S.C. § 844(e).

---

[3] The Tenth Circuit held in *U.S. v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999) that in order to constitute a true threat, the statement "must be one that a reasonable person in the circumstances would understand as a declaration of intention, purpose, design, goal, or determination to inflict [bodily injury] on another." However, after *Black*, the Tenth Circuit imposed an *additional* element—that the defendant intended the recipient to feel threatened. *See Heineman*, 767 F.3d at 982 ("[T]o say that the effect on the listener supports a 'threat' exception to the freedom of speech does not mean that no other considerations come in to play. … When the speaker does not intend to instill fear, concern for the effect on the listener must yield."). In doing so, the court specifically held that *Viefhaus* predated *Black* and thus, is not binding "to the extent that it is inconsistent with a later Supreme Court decision." *Id*. at 973.

## II.   Mr. Varnell Was Not Engaged in Criminal Activity Prior to the Government's Involvement

Second, the government suggests that Mr. Varnell's activity prior to its involvement was not only a violation of 18 U.S.C. §844(e), but arguably constituted several *additional* crimes: (1) engaging in the solicitation of others to commit crimes of violence, in violation of 18 U.S.C. § 373(a), and (2) attempts under 21 Okla. Stat. § 44 to form a conspiracy under 21 Okla. Stat. § 421 to damage property and injure persons by means of an explosive device, in violation of 21 Okla. Stat. §§ 1268.3 and 1767.1(A)(6).  However, the statements cobbled together by the government in support of these allegations do not amount to the criminal activity described.[4]  Mr. Varnell's statements do not even come *close* to amounting to solicitation of others to commit crimes of violence, or attempting to conspire to damage property or injure persons by means of an explosive device.  While he spoke generally about explosive devices, he made no attempt to solicit anyone, much less conspire with them.  To the extent the government believes that Mr. Varnell's wholly unsubstantiated statement, "I believe I just found a like[-]minded guy," supports its accusation that he was soliciting others, it should be noted that the government never

---

[4] For this Court's reference, the statements cited by the government in support of these allegations are: "I'm out for blood.  When militias start getting formed[,] I'm going after the government officials when I have a team."; "I finally have a chance to do something about how things are, I plan to do as much as I can.  I've been reading about the best places to find stuff to make bombs."; "When I'm able I'm going to do some Tyler Durden shit.  The government is going to [expletive] burn with those who stand with it."; "I believe I just found a like[-]minded guy."; in response to whether the like-minded guy was survival or team or both, "Team[.]"; "I'm [expletive] done after this anonymous [expletive].  I need a team.  Idc [(I don't care)] what happens with this election, it's time to bomb some [expletive] banks[.]"; "I'm not running away, I'm taking action.  I need a team."

5

located, much less identified, the "like[-]minded guy" that Mr. Varnell spoke of. [Doc. 218 at n. 3]

Similarly, the government argues that Mr. Varnell's statements support the fact that he made and possessed homemade explosive devices, in violation of 18 U.S.C. § 922(g) and 26 U.S.C. § 5861(f). However, the statements cited by the government in support of these allegations fall far short of the government's characterization as "evidence of an ongoing criminal enterprise."[5] [Doc. 249 at 9] In reality, Mr. Varnell's statements were made merely to fit in with the "survivor group" that Mr. Elisens introduced him to. Mr. Varnell's mother testified that Mr. Varnell never had or made a pipe bomb, as he bragged about. Neither did the FBI, during its extensive search of the Varnell property, find any explosives or evidence that Mr. Varnell had manufactured explosives in the past.

Mr. Varnell does not argue, as the government suggests, that the government "must prove that a defendant has in fact already committed a crime prior to initiating a sting operation, much less prove each essential element." [Doc. 249 at 5] However, the government is not permitted to "engineer and direct the criminal enterprise from start to finish," "generate[] new crime for the purpose of prosecuting it," or "induce[] a defendant to become involved for the first time in criminal activity." *U.S. v. Mosley*, 965 F.2d 906,

---

[5] For this Court's reference, the statements cited by the government in support of these allegations are: "I like bombs. They're efficient. A simple mix of one cup of gasoline and half a cup of powdered chlorine will incapacitate a large room."; "I minored in chemistry for a reason. Bombs are cheaper than bullets lol [(laughing out loud).]"; "Ya brake fluid[']s pretty nasty[.] [Y]ou can make bombs with it."; "I've learned enough chemistry over the years, I can make a gas bomb out of anything. If I ever need to hit up Walmart when SHTF [([expletive] hits the fan)], I'm going to the pool section first."

911 (10th Cir. 1992); *U.S. v. Dyke*, 718 F.3d 1282, 1288 (10th Cir. 2013).  Therefore, whether and to what extent Mr. Varnell was engaged in criminal activity prior to the initiation of the sting operation is relevant to the determination of whether the government generated a new crime, or merely infiltrated an ongoing criminal enterprise.  "[I]nfiltration implies that there is an organization to infiltrate."  *U.S. v. Batres-Santolino*, 521 F.Supp. 744, 751 (N.D.Ca. 1981) (upholding outrageous government conduct defense).  Where no such organization exists, and the defendant was "not embarked or about to embark on any criminal activity until the government's agent set in motion the operation," the government's conduct has been found to be outrageous.  *Batres-Santolino*, 521 F.Supp. at 752.

### III.  The Government's Behavior in Supplying the Materials Contributed to the Outrageousness of its Conduct

In defense of its conduct, the government claims that it provided all the materials for the bomb because "[a]gents did not want Mr. Varnell putting himself or others in actual danger by acquiring or using volatile materials." [Doc. 249 at 12]  Yet, the FBI determined on February 10, 2017—just two months prior to the government's involvement—that Mr. Varnell was not a threat because he "[did] not have a job or a vehicle" and [did] not appear to have the means to actually commit" the acts he spoke of.  Thus, the government's concern that Mr. Varnell would have, much less *could* have, acquired the materials is directly contradicted by its own report.  While this alone may not amount to outrageous government conduct, it contributes to the totality of the circumstances.

7

## IV. Mr. Varnell's Mental Health Is a Factor that Should Be Considered When Evaluating the Outrageousness of the Government's Conduct

Finally, Mr. Varnell does not suggest that mental illness alone "renders the government's investigation into him outrageous." [Doc. 249 at 13]  However, if this Court is to consider the totality of the circumstances, as required by Tenth Circuit precedent, then it should at least consider his mental health as a factor when determining the outrageousness of the government's conduct.  The fact that Mr. Varnell was aware of his mental illness and previously made light of it does not in any way diminish the role it played in the FBI's creation of this crime.

Respectfully submitted,

/s/ Vicki Zemp Behenna
Vicki Zemp Behenna, OBA #10734
MULINIX, GOERKE & MEYER, PLLC
210 Park Avenue, Suite 3030
Oklahoma City, OK 73102-8005
Telephone: 405-232-3800
Facsimile:   405-232-8999
Email:  vzb@lawokc.com
and
Marna Franklin, OBA 17148
Franklin Law Firm, P.C.
620 N. Robinson Avenue, Suite 203
Oklahoma City, OK  73102
Telephone:  405-239-2726
Facsimile:  405-605-2284
Email: mfranklin@demandproof.com

*Attorney for Defendant,*
*Jerry Drake Varnell*

## CERTIFICATE OF SERVICE

    I hereby certify that on the 27th day of March, 2019, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing, which will automatically send e-mail notification of such filing to all attorneys of record.

                                              /s/ Vicki Zemp Behenna
                                              Vicki Zemp Behenna