**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                                              ) | Case No. 17-CR-239-D |
| ) | |
| JERRY DRAKE VARNELL, ) | |
| ) | |
| Defendant. ) | |

**JERRY DRAKE VARNELL'S RESPONSE TO
THE GOVERNMENT'S SENTENCING MEMORANDUM**

**1. Introduction**

The government's Sentencing Memorandum concentrates on four primary areas surrounding the offense level computation of Drake's sentencing guideline calculation - 1) intended loss; 2) conscious or reckless risk of death or serious bodily injury; 3) victim related adjustment (the terrorism enhancement); and 4) acceptance of responsibility. Each topic will be addressed in turn.

**A. Intended Loss**

The government advocates for the inclusion of "replacement cost" for the replacement of the entire First National Center, in the intended loss calculation. However, there is no evidence to support the government's conclusion that the entire First National building would have been destroyed. While it is true that Special Agent Black is a bomb tech, he has no credentials as a structural engineer and any statement made by him that the

1

First National Center would have been destroyed, is speculative at best.

In determining loss under USSG §2B1.1, a sentencing court "need only make a reasonable estimate of the loss." The application note states that loss "shall be based on available information, taking into account, . . .factors such as the following:  1) the fair market value of the property . . .destroyed; or, if the fair market value is impracticable to determine or inadequately measures the harm, the cost to the victim of replacing that property." An additional factor the court can consider in determining loss is the cost of "repairs to damaged property."

Drake does not dispute the fair market value of the BancFirst building and its contents. However, it is purely speculative to represent that the First National Center would have been completely destroyed. Even if the court were to speculate and accept that the inert bomb could have completely destroyed the First National Center, the government's position that the loss, for purposes of establishing the guideline calculation, should be $300,000,000 to $350,000,000 is unreasonable and completely unsupported.[1] Drake submitted evidence that the First National building sold in January 2017 for $23,000,000. That is the fair market value of the building before renovations - not the value the government is attempting to suggest.

**B.  Conscious or Reckless Risk of Death or Serious Bodily Injury**

Drake's only objection to paragraph 37 was to determine the basis for the two-level enhancement.   With the presentence writer's inclusion of the reference to USSG

---

[1] The First National Center has undergone extensive abatement and renovation since it's purchase in January 2017.  It is believed that the government's replacement cost of $300,000,000 is based upon the value of the building after renovations.

2

§2B1.1(b)(6), Drake has no objection.

### C. Victim Related Adjustment (the terrorism enhancement)

Throughout the government's sentencing memorandum they use phrases such as "Mr. Varnell wished to inflict the most amount of damage possible – to cripple the government" (Doc. 293 at pg. 5); and "Mr. Varnell" wanted "a target that will cripple the government and say 'you [the government] are a target.'" (Doc. 293 at pg. 7). The government's sentencing memorandum references Drake's rants on social media from the fall of 2016, and the statement he prepared at the request of Brent Elisens as evidence of Drake's intent to "influence or affect the conduct of the government . . . or to retaliate against government conduct." It is the government's position that this evidence satisfies the definition of a "federal crime of terrorism" and hence the application of the terrorism enhancement under USSG §3A1.4(a).

The terrorism enhancement applies to "any felony that involved, or was intended to promote, a federal crime of terrorism." USSG §3A1.4(a). A federal crime of terrorism means an offense that – 1) *is calculated* to influence or affect the conduct of the government by intimidation or coercion, or to retaliate against government conduct; and is a violation of either 18 U.S.C. §844(i) or §2332(a). See, 18 U.S.C. §2332b(g)(5).

The government fails to explain how placing an inert bomb in the alley behind a corporate owned state-chartered bank is *calculated* to influence or affect the conduct of the federal government? Likewise, how is an attempt to blow up a privately-owned bank building *calculated* to retaliate against government conduct? BancFirst was not housed in a federal building, nor was it on federal property. It was not a federal reserve bank and

there is absolutely no evidence that destroying private property would influence, affect, or retaliate against the federal government.

After Drake's arrest he was interviewed by the FBI. The agents asked Drake why target the BancFirst building. He responded saying Mike asked him to look for places that don't have a lot of security. . ." When asked how is the bank tied to the federal government Drake's response was, "un, really dude? It's a fucking bank of course it has ties to the government." This statement represents the confused logic of a young man who clearly doesn't understand that a publicly traded corporation does not have ties to the government. There is no evidence that this plot to detonate a bomb outside a privately-owned state-chartered bank could be *calculated* to "influence, affect, or retaliate" against the government. As such, the oppressive terrorism enhancement should not apply.

**D.  Acceptance of Responsibility**

It is truly unfortunate that the government in this case, has no understanding or empathy for Drake's long history of mental illness, and refuses to understand how his mental illness could be a significant contributing factor in his offense conduct. It is likewise astounding that the government continues to imply that Drake was faking his mental illness, writing that "Mr. Varnell's schizophrenia" was reportedly in "full remission." (Doc. 293 at pg. 11). "Full remission" doesn't mean that Drake's mental illness is cured or that he doesn't have schizophrenia anymore – it means only that his symptoms are controlled with the use of anti-psychotic medication.

Drake has been on an anti-psychotic medication for over seven years. Physicians do not prescribe anti-psychotic medications to people who do not have significant mental

illness. Even while in the custody at the Grady County jail, health care professionals who have treated Drake continue to prescribe anti-psychotic medications for him, as well as other medications for anxiety and depression.

Drake's case, while factually very similar to Mr. Llanez's case in *United States v. Llaneza,* Case No. CR-13-145-YGR, N.D. CA (2014), has had a significantly different outcome, primarily because Drake exercised his constitutional right to a jury trial.  In *Llaneza,* the government, knowing that Mr. Llaneza was severely mentally ill, agreed that his mental illness was a significant contributing factor to his offense conduct and offered him a plea deal of 180 months, when his guideline calculation would have been 360 – life. In contrast, Drake declined the government's plea offer, believing instead that he was entrapped by the government's agents.

Drake's sole defense at trial was that government agents entrapped him, and further that his mental illness played a significant factor in the government's ability to coax him into action.  He never denied he built the bomb; he never denied that he drove the truck with the bomb to the BancFirst building; and he never denied that he attempted to detonate the bomb.  (Gov. Ex. 119).

The government's arguments that Drake "consistently denied facts relevant to the jury's finding of guilt" fails to recognize that the defense of entrapment requires the government to prove beyond a reasonable doubt that Drake was predisposed to build an explosive device to damage or destroy personal property, or to use a weapon of mass destruction.  Evidence that Drake did not comply with the directions of the government agents - that he did not provide explosive components, barrels, the truck, select the location

on his own, or build the bomb on his own, are facts relevant to the issue of Drake's predisposition to commit the crimes for which he was charged.

Drake's exercise of this constitutional right to trial does not disqualify him from receiving a two-point reduction for acceptance of responsibility. As the Tenth Circuit has noted, "the entrapment defense is one of those 'rare situations' contemplated by the Sentencing Guidelines in which a defendant may go to trial and still receive an acceptance of responsibility reduction." *United States v. Garcia,* 182 F.3d 1165, 1173 (10th Cir. 1999). A sentencing court's decision to apply a two-point reduction for acceptance of responsibility is given great deference and is reviewed under the clearly erroneous standard. *United States v. McGehee,* 672 F. 3d 860, 877 (10th Cir. 2012).

The jury's verdict finding that Drake was not entrapped by the government does not close the door on the question of whether Drake, left to his own devises, and without the encouragement of the FBI, would have actively attempted to obtain bomb components, barrels, a box truck, and other items needed to detonate an explosive device outside the BancFirst Building in the early morning hours of August 12, 2019. The defense continues to believe that, absent government involvement, it is highly unlikely Drake's conduct would have escalated beyond posting anti-government rants on social media and in private chat rooms. As such, a sentence of life is unreasonable and greater than necessary to achieve the sentencing objectives of 18 U.S.C. §3553(a)(2).

        Respectfully submitted,

        /s/ Vicki Zemp Behenna
        Vicki Zemp Behenna, OBA #10734

>MULINIX, GOERKE & MEYER, PLLC
>210 Park Avenue, Suite 3030
>Oklahoma City, OK 73102-8005
>Telephone: 405-232-3800
>Facsimile:   405-232-8999
>Email:  vzb@lawokc.com
>
>  *-and-*
>
>Marna Franklin, OBA #17148
>Franklin Law Firm, P.C.
>620 N. Robinson Avenue, Suite 203
>Oklahoma City, OK 73102
>Telephone: 405-239-2726
>Facsimile: 405-605-2284
>Email: mfranklin@demandproof.com
>
>*Attorneys for Defendant,*
>*Jerry Drake Varnell*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of November, 2019, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing.

>/s/ Vicki Zemp Behenna