## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-17-239-D |
| | ) | Case No. CIV-23-245-D |
| JERRY DRAKE VARNELL, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Before the Court is Defendant Jerry Drake Varnell's *pro se* Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255 and brief in support [Doc. Nos. 339, 340]. The Government filed a response [Doc. No. 349], to which Defendant replied [Doc. No. 351]. The Government was then permitted to file a sur-reply [Doc. No. 355]. Also before the Court is Defendant's Motion to Appoint Counsel [Doc. No. 352]. For the following reasons, the Court finds that no evidentiary hearing is needed, and Defendant's motions should be denied.[1]

## BACKGROUND

Defendant met Brent Elisens (Elisens) on Facebook in 2015. Both Defendant and Elisens were members of a group chat with other individuals about creating a self-sufficient

---

[1] No evidentiary hearing is needed where the existing record conclusively shows the defendant is not entitled to relief. *See United States v. Lopez*, 100 F.3d 113, 121 (10th Cir. 1996); 28 U.S.C. § 2255(b). Further, "allegations must be specific and particularized; conclusory allegations will not suffice to warrant a hearing." *Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (quotations and alterations omitted).

community, free of capitalism. When the idea fell apart, and it became clear to Elisens that the group's motives were different from his, Elisens stopped participating in the group chat in October of 2016. Thereafter, Elisens and Defendant continued to talk separately on Facebook and TextLock, a secure communication app that encrypted their messages.

At Defendant's trial, Elisens testified that his conversations with Defendant evolved, and Defendant's thinking began to involve offensive attacks on the government. On October 22, 2016, Defendant sent the following message to Elisens in TextLock: "I'm out for blood. When militias start getting formed I'm going after government officials when I have a team." Gov't Ex. No. 202, at 5. Defendant also stated that he had "been reading about the best places to find stuff to make bombs." *Id.* Later in the conversation, Defendant messaged Elisens: "When I'm able I'm going to do some Tyler Durden[2] shit. The government is going to fucking burn with those who stand with it." *Id.* at 11. Defendant further stated, "I've learned enough chemistry over the years. I can make a gas bomb out of anything. If I ever need to hit up Walmart when SHTF, I'm going to the pool section first." *Id.* at 13.

On October 29, 2016, Defendant told Elisens that he thought he found a "like minded guy" for his "team." *Id.* at 19. A week later, Defendant told Elisens, "I need a team. Idc what happens with this election, it's time to bomb some fucking banks." *Id.* at 34. Elisens responded "no, right now it's time to just go, I'm telling you." *Id.* Defendant responded, "I'm not running away, I'm taking action. I need a team." *Id.* Elisens tried to

---

[2] Elisens testified that Tyler Durden was a character in *Fight Club* who desired to blow up banks to erase people's debt.

deescalate the discussion, but Defendant responded that the "time is now" and that he thought he was "going to go with what the okc bomber used. Diesel and anhydrous ammonia. I might have to make a distillery to process some stuff but that's a solid recipe." *Id.* at 35-37.

The foregoing conversations all occurred prior to the FBI's investigation. Elisens testified that he absconded from federal supervision in late November of 2016, and that his supervised release was revoked upon returning to Oklahoma City. After receiving a nine-month prison sentence, Elisens communicated his concerns about Defendant to his attorney in December of 2016, and met with his attorney and FBI agents in January of 2017. Upon his release from federal custody that March, Elisens agreed to meet with FBI agents again concerning Defendant. Thereafter, Defendant and Elisens, now in his capacity as an informant, continued their communications. Gov't Ex. No. 203, at 1.

In addition to their Facebook and TextLock communications, Defendant and Elisens met in person several times. Elisens recorded their in-person conversations, in which Defendant discussed plans to put 1,000 pounds of ammonium nitrate in a rental van, park it somewhere, and use a remote trigger or timer to activate the explosive device. Defendant suggested writing a program to send a ping to the detonation device from a burner phone. Elisens offered to introduce Defendant to an individual with bomb-making knowledge whom he referred to as "the Professor," who was actually an FBI undercover agent named Mark Williams (Williams).

On June 15, 2017, Defendant and Elisens discussed the idea of BancFirst as a potential target. Gov't Ex. No. 105. On June 26, Williams met Defendant at Defendant's

home, and Williams recorded their conversations as they rode to and from a restaurant in Elk City. Gov't Ex. No. 108. They discussed obtaining a fake ID to rent a vehicle; using a storage facility in El Reno to build the bomb; how they would transport the bomb; using a burner phone; the timing of the detonation – during non-business hours to minimize loss of life; and using 1,000 pounds of ANFO. *Id.* Although Williams reminded Defendant that he did not have to move forward with the plan, Defendant texted Williams soon after their first meeting, stating "I checked and I've got a couple barrels." *Id.*; Gov't Ex. No. 67, at 8.

On a scouting trip to Oklahoma City, Williams and Defendant walked around the BancFirst building and discussed placing the bomb in the alley next to BancFirst. Gov't Ex. Nos. 61-63. Defendant noted that he didn't "like it, but [was] sold on that access road." Gov't Ex. No. 109. Defendant desired to "put a message on it and claim it" so that ISIS could not take credit for the bomb. *Id.* When Williams asked Defendant if he still wanted to go through with the plan, Defendant said "fuck yeah." *Id.* On August 10, 2017, Defendant sent Elisens the message he wanted to disseminate after the bombing, which stated that the bombing was "[r]etaliation against the freedoms that have been taken away from the American people" and a "call to arms, to show people that there are still fighters among the American people. The time for revolution is now." Gov't Ex. No. 204, at 14.

At trial, Williams testified that he and Defendant constructed the inert bomb in a storage unit in El Reno on August 11, 2017 [Doc. No. 331, Tr. at 702]. Around midnight, Defendant drove the van carrying the bomb from El Reno to downtown Oklahoma City and circled the block of the BancFirst building until a private security vehicle left the alley [Tr. at 719]. Defendant powered the device, got into Williams' vehicle, and the two drove

to a location where Defendant would be able to hear the explosion [Tr. at 719-21]. Defendant asked for Williams' burner phone and dialed the number to detonate the bomb [Tr. at 721; Gov't Ex. No. 118]. When no explosion occurred, Williams told Defendant to try the number again, and Defendant dialed a second time. *Id.* When there was still no explosion, the two discussed the steps Defendant took to arm the device, and they reviewed the hand-written instructions. Defendant dialed the number to detonate for a third time before his arrest. *Id.*

Defendant was charged in a two-count superseding indictment with attempting to damage by means of an explosive device the BancFirst office building; and attempting to use a weapon of mass destruction against any person or property within the United States, all in violation of 18 U.S.C. §§ 844(i) and 2332a [Doc. No. 121]. Defendant filed several pre-trial motions, one of which sought dismissal of the superseding indictment for outrageous government conduct [Doc. No. 212], which the Court took under advisement prior to trial [Doc. No. 225].

Following a jury trial, Defendant was convicted on both counts [Doc. No. 242]. Defendant moved for a directed verdict pursuant to FED. R. CRIM. P. 29 [Tr. at 1179], which the Court denied [Tr. at 1195-96]. The Court also denied Defendant's motion to dismiss based on outrageous government conduct [Tr. at 1196-99]. After trial, Defendant filed a motion for judgment of acquittal, again alleging insufficient evidence and outrageous government conduct [Doc. No. 247]. The motion was denied [Doc. No. 275].

When calculating the advisory guidelines range for Defendant's sentencing, the Court included the twelve-level terrorism enhancement set out in USSG §3A1.4(a). The

Court varied downward from the advisory guidelines range of life imprisonment and sentenced Defendant to 300 months. Defendant timely appealed his conviction and sentence, arguing outrageous government conduct and that the Court erred in applying the terrorism enhancement. The Tenth Circuit affirmed Defendant's conviction and sentence. *United States v. Varnell*, 2021 WL 5875718 (10th Cir. Dec. 13, 2021) (unpublished).

## DISCUSSION

Under 28 U.S.C. § 2255, a prisoner in federal custody may challenge his sentence on the basis that "the sentence was imposed in violation of the Constitution or laws of the United States … or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The movant is entitled to an evidentiary hearing on his claim "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Defendant asserts his sentence should be vacated for ineffective assistance of counsel; destruction of evidence; lack of probable cause for the underlying investigation; illegal search and seizure; the Court's alleged error in applying the terrorism enhancement; actual innocence; "FBI manipulation"; prosecutorial misconduct; and "FBI perjury about schizophrenia." Because Defendant is *pro se*, the Court construes his pleadings liberally. *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[W]e must construe [a pro se litigant's] arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

## I.    Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, Defendant must demonstrate both that counsel's performance was deficient and that the deficiency prejudiced the defense. *See*

*Smith v. Duckworth*, 824 F.3d 1233, 1249 (10th Cir. 2016). "An insufficient showing on either element is fatal to an ineffective-assistance claim, rendering consideration of the other element unnecessary." *Duckworth*, 824 F.3d at 1249. In assessing the performance prong of an ineffective assistance claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). To prove deficient performance, a defendant must demonstrate that his counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Under this standard, a counsel's conduct must have been "completely unreasonable, not merely wrong." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (quoting *Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010)). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Importantly, "[a]llegations that are speculative, vague, or conclusory are insufficient to satisfy the *Strickland* standard." *Zajac v. United States*, 154 F.Supp.3d 1230, 1236 (D. Utah 2015), *aff'd*, 680 F. App'x 776 (10th Cir. 2017) (internal quotation marks and citations omitted).

### A.    Entrapment Defense and Sentencing Manipulation

Defendant contends that his counsel was ineffective by switching from an entrapment defense to an outrageous government conduct defense. However, the record does not support Defendant's implication that his counsel abandoned the entrapment defense. Defendant's counsel moved for a directed verdict based on entrapment and argued

both government inducement and Defendant's lack of predisposition to engage in the criminal conduct [Tr. at 1179-83]. Defense counsel focused primarily on entrapment during closing arguments, concluding with: "You now have all the facts, you now have all the law. The government cannot and did not prove that Mr. Varnell wasn't entrapped, because he was." [Tr. at 1495]. Defense counsel also argued entrapment at Defendant's sentencing [Doc. No. 332, at 39] and moved for a downward departure based on entrapment [Doc. No. 290].

Nor did Defendant's counsel fail to argue sentencing manipulation. As reflected in the Presentence Investigation Report, defense counsel advocated for a downward departure based on sentencing manipulation [Doc. No. 280, at 47-48]. And, contrary to Defendant's assertion that the Report writer "argued for" sentencing manipulation, the Report writer actually opposed defense counsel's objection and found it inapplicable to Defendant's case. *Id.* at 49. Because defense counsel argued both entrapment and sentencing manipulation, Defendant cannot show that his counsel was deficient under *Strickland*.

### B.     Facebook Messages

Defendant contends his counsel was ineffective for failing to argue that "pre-sting Facebook messages" were unfairly prejudicial and an improper means to show Defendant's predisposition to engage in the criminal conduct. Defendant does not cite to particular messages or any legal authority barring the Government from using Defendant's Facebook messages to show his predisposition to participate in the criminal activity. Defendant similarly fails to show how the "pre-sting Facebook messages" were unfairly prejudicial. "Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes

an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *United States v. Otuonye*, 995 F.3d 1191, 1207 (10th Cir. 2021) (citation omitted). Merely alleging that counsel should have argued unfair prejudice with respect to unidentified Facebook messages is insufficient to show ineffective assistance of counsel under *Strickland*.

Defendant also alleges that his counsel "failed to introduce evidence from the Facebook messages that backed up his innocence." [Doc. No. 340, at 2]. Without more, Defendant's vague allegation, without reference to specific evidence, is not sufficient to show ineffective assistance of counsel.

### C.    Eccles Building

Defendant next argues that his counsel erred by failing to argue that the Government should have been barred from suggesting at trial that Defendant wanted to bomb the Eccles Federal Reserve Board Building. Defendant contends that Elisens was the only person who referred to the Eccles building and "evidence refuted any knowledge of it by Varnell." [Doc. No. 340, at 2]. However, Elisens testified at trial that Defendant sent him the name of the Eccles building – the first discussion of a specific target – and asked Elisens to send him latitude-longitude coordinates for the building [Tr. at 278]. Defendant fails to explain how Elisens' testimony was insufficient to support the Government's suggestion that Defendant had the Eccles building in mind as a specific target. Defendant's argument that his counsel was ineffective for failing to argue against the Government mentioning the Eccles building fails in light of Elisens' testimony.

Further, Defendant's counsel did not let Elisens' testimony and the Government's references to the Eccles building go unchallenged. Defense counsel argued in opening statements that Elisens lied to the FBI when he said Defendant had threatened the Eccles building and dedicated a large portion of closing arguments to discrediting Elisens and his alleged targeting of Defendant [Tr. at 201, 1474-82]. Defendant's counsel was not "completely unreasonable," nor has Defendant shown a reasonable probability that the outcome of his trial would have been different had his counsel argued that the Government should not be able to refer to the Eccles building. *See Byrd*, 645 F.3d at 1168; *Strickland*, 466 U.S. at 694.

### D.     Failure to Call Witnesses

Defendant alleges ineffective assistance of counsel for his counsel's failure to call four witnesses at trial: Brian Martin, Raul Bajunda, Rhiannon Morrison, and Mike Smith. "Generally, the decision whether to call a witness rests within the sound discretion of trial counsel." *Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998) (citing *United States v. Snyder*, 787 F.2d 1429, 1432 (10th Cir. 1986)).

Defendant contends that recordings of conversations between FBI agent Brian Martin and Elisens "prove Martin believed he was above the law." [Doc. No. 340, at 2]. Beyond this statement, Defendant does not explain how calling Martin to testify would have helped Defendant's case. Similarly, Defendant alleges that FBI agent Raul Bajunda held a press conference about Defendant's arrest and repeated lies stated in the affidavit for a search warrant, but Defendant does not describe what testimony of Bajunda's would have been beneficial to his defense. *Id.* at 22. Given trial counsel's discretion to select which

witnesses to call at trial, Defendant's vague argument that Martin and Bajunda should have testified is not sufficient to show that his counsel was deficient under *Strickland*.

Defendant further argues that his counsel should have called Rhiannon Morrison to testify at trial. Defendant alleges that Morrison was present for some of Elisens' visits with Defendant and "could clear up a seriously muffled recorded conversation between them." *Id.* at 2. Without more, Defendant's allegation that Morrison could have cleared up a muffled recording that was introduced into evidence is too vague to satisfy the *Strickland* standard. Defendant also alleges that Morrison told Elisens that *Elisens* wanted to blow something up. Although Defendant does not expand on this point, he may be suggesting that Morrison could have testified it was Elisens, and not Defendant, who wanted to bomb a building. However, the record evidence – to include Defendant's messages to Elisens and his conversations with Williams – reflects Defendant's own desire to make and detonate a bomb. Accordingly, Defendant has failed to show deficient performance or prejudice under *Strickland*.

Defendant also contends that his counsel should have called Mike Smith to testify that when Smith offered Defendant a van, Defendant ignored the offer. However, defense counsel argued that Defendant ignored communications such as Smith's offer; introduced into evidence Defendant's communication with Smith showing the offer and lack of response from Defendant; and Eric Larsen also testified that Defendant had not responded to Smith's offer to supply a van [Tr. at 1009, 1137-44]. Accordingly, Defendant has failed to show a reasonable probability that the result of his trial would have been different had Smith also testified that Defendant ignored his offer.

### E.    Terrorism Enhancement and 18 U.S.C. § 2332a

Defendant claims ineffective assistance for his counsel's failure to argue that the terrorism enhancement, USSG §3A1.4, and 18 U.S.C. § 2332a are unconstitutional. Section 3A1.4 is a sentencing guideline enhancement used "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." USSG §3A1.4(a). Section 2332a renders it illegal for "[a] person who, without lawful authority, uses, threatens, or attempts or conspires to use, a weapon of mass destruction … against any person or property within the United States." 18 U.S.C. § 2332a(a)(2).

Defendant alleges that the terrorism enhancement is constitutionally void because it leads to significant additional prison time and is applied in an arbitrary and capricious manner. Defendant further alleges that the terrorism enhancement should not be applied unless the enhancement is found applicable by a jury, citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000). However, as the Government notes, *Apprendi* does not apply to the present advisory-guidelines regime. *See United States v. Ray*, 704 F.3d 1307, 1314 (10th Cir. 2013) (citing *United States v. Booker*, 543 U.S. 220, 259 (2005)); *see also United States v. Hemsley*, 287 F. App'x 649, 651 (10th Cir. 2008) (citation omitted) ("*Apprendi* does not apply to sentencing factors which increase a defendant's guideline range but do not increase the sentence above the statutory maximum.").

Defendant contends that 18 U.S.C. § 2332a is unconstitutional because it "has no mens rea element nor does it have terrorism listed in any part of the written statute." [Doc. No. 340, at 2]. Both arguments are without merit. First, "[w]hen Congress fails to specify the degree of criminal intent required for a statutory offense, courts will either read in a

level of intent or hold that the statute creates a strict liability crime." *United States v. McVeigh*, 153 F.3d 1166, 1193 (10th Cir. 1998). In *McVeigh*, the Tenth Circuit "conclude[d] that the intent standard of 'knowingly' is appropriate for each of the elements of a § 2332a violation." *McVeigh*, 153 F.3d at 1194. In Defendant's case, the jury was instructed that, to find Defendant guilty of a § 2332a violation, they would need to find beyond a reasonable doubt that Defendant "knowingly attempted to use a weapon of mass destruction without lawful authority" and "knowingly did so against persons or property in the United States." [Doc. No. 241, at Instr. 18]. Section 2332a is not unconstitutional merely because it does not contain the word "knowingly," and Defendant has not cited any authority for his position. Nor does Defendant explain why § 2332a should be deemed unconstitutional because it does not contain the word "terrorism."

Under the *Strickland* standard, Defendant has failed to show that his counsel's failure to argue these points fell below an objective standard of reasonableness.

### F.   Narnia Drug

Defendant also contends that his counsel was ineffective for failing to submit evidence that Defendant wanted to make a drug called "Narnia." However, defense counsel conducted a direct examination of Defendant's mother, who testified that Defendant wanted to make a drug called Narnia; that he had e-mailed family friends and relatives to invest in the drug; and that the drug was going to "cure mind control." [Tr. at 1234-36]. Construing Defendant's arguments liberally, Defendant appears to argue that his conversations with Elisens could have been about making the Narnia drug and that, with additional testimony, jurors could have believed that his references to chemicals and

supplies involved his drug-making venture as opposed to his desire to make a bomb. However, Defendant's desire to make and detonate a bomb is heavily supported by the record evidence. Additional evidence of Defendant's desire to make the Narnia drug would have, at most, indicated that Defendant wanted to make drugs *and* a bomb. In his motion, Defendant does not show: 1) that counsel's decision not to call additional witnesses on this point was unreasonable under *Strickland*; or 2) how presenting additional evidence of Defendant's desire to make the Narnia drug would have aided in his defense or changed the outcome of his proceedings.

### G.    Custer County Files – Mental Health Status

Defendant's arguments with respect to certain Custer County records and his mental health status are unclear. Defendant appears to allege that his counsel was ineffective in failing to obtain mental health records from Custer County, and that the records would have prevented the Government from suggesting that Defendant was malingering. In response, the Government represents that the Custer County documents were produced in discovery (VAR_000379-000497, including Def.'s Ex. 1).

The record also reflects that Defendant's counsel argued repeatedly at trial that Defendant suffered from schizophrenia. [Tr. at 195-96] ("Suffering with a mental illness such as schizophrenia is challenging…"); [Tr. at 196] ("In 2013, you will hear evidence that [Defendant] suffered what was described as a severe schizophrenic episode. And at the age of 19, he was, again, admitted for inpatient treatment, this time for over a month."). Defense counsel further referenced the Custer County records when explaining counsel's intent to question Jennifer Schmitz on whether she learned during the FBI's investigation

that Defendant could be suffering from schizophrenia [Tr. at 827]. Further, as noted by the Government, the Court acknowledged Defendant's schizophrenia diagnosis, but referenced testimony by Defendant's mother that "Defendant's last hospitalization for mental health problems was in 2013." [Doc. No. 275, at 19]. Defendant's mother further testified that Defendant had taken his mental health medication since 2013, and she would have sought his hospitalization if he had been suffering from severe delusions from January 2017 – August 2017, the time of the charged conduct. *Id.*

Upon consideration, the Court finds that Defendant has failed to establish that his counsel acted unreasonably with respect to Defendant's mental health status or records from Custer County. Especially considering Defendant's mother's testimony related to his mental health status in 2017, Defendant has also failed to explain how the outcome of his proceedings would have changed had his counsel acted differently.

### H.     Change of Venue

Defendant has failed to show ineffective assistance of counsel for failure to seek a change of trial venue. Defendant argues that his counsel should have moved for a change of venue because "[a]ny competent person could conclude that having a trial right next to the OKC memorial would cause substantial prejudice" when "the prosecution was accusing the defendant of trying to replicate that very scene." [Doc. No. 340, at 4]. The Government contends that the Court ensured during voir dire that all potential jurors could give Defendant a fair trial; and that Defendant cannot show that the Court would have granted a motion for change of venue. The Court agrees.

To show ineffective assistance of counsel for counsel's failure to seek a change of trial venue, a "petitioner must show, at a minimum, that the trial court would have or should have granted a change of venue motion." *Tafoya v. Tansy*, 9 F. App'x 862, 871 (10th Cir. 2001). "This, in turn, requires him to show actual or presumed prejudice on the part of the jurors." *Tafoya*, 9 F. App'x at 871. "Actual prejudice requires showing that one or more jurors believed before trial that petitioner was guilty and that they could not set these pre-formed opinions aside at trial." *Id.* at 872 (citation omitted).

As Defendant's argument is limited to the courthouse's proximity to the Oklahoma City bombing memorial, Defendant appears to argue presumed prejudice, which requires a showing "that an irrepressibly hostile attitude pervaded the community." *Hale v. Gibson*, 227 F.3d 1298, 1332 (10th Cir. 2000) (citing *Stafford v. Saffle*, 34 F.3d 1557, 1567 (10th Cir. 1994)). "Simply showing that all the potential jurors knew about the case and that there was extensive pretrial publicity will not suffice to demonstrate that an irrepressibly hostile attitude pervaded the community." *Id.* (citation omitted). "Presumed prejudice is 'rarely invoked and only in extreme circumstances.'" *Id.* (citation omitted). In the rare cases where prejudice is presumed, "'the influence of the news media, either in the community at large or in the courtroom itself, pervaded the proceedings,' and created either a circus atmosphere in the [courtroom] or a lynch mob mentality such that it would be impossible to receive a fair trial." *Id.* (internal citation omitted).

Defendant bases his change-of-venue argument solely on the courthouse's proximity to the bombing memorial, noting that jurors could see the memorial on their way into and out of the courthouse. Although presumed prejudice cases generally analyze pre-

trial news coverage, Defendant does not refer to any media coverage related to his conduct or proceedings. Defendant has not met the "extremely high burden" to establish presumed prejudice. The Court finds that the courthouse's proximity to the bombing memorial, without more, is not an "extreme circumstance" requiring a change of venue. Accordingly, Defendant has failed to establish that his counsel was ineffective for failing to seek a venue change.

### I.    Colluding with Prosecution

Defendant also accuses one of his attorneys, Marna Franklin, of colluding with the Government. Defendant bases this accusation on Ms. Franklin resting Defendant's case before all witnesses were called; Ms. Franklin's refusal to let Defendant "decide anything"; and Ms. Franklin's alleged suspicion that the Government was "in her emails and listening to her conversations." [Doc. No. 340, at 4].

As previously noted, "the decision whether to call a witness rests within the sound discretion of trial counsel." *Jackson*, 143 F.3d at 1320. Without more, Defendant's vague allegations that Ms. Franklin did not call some witnesses and did not let Defendant decide trial strategy are not sufficient to establish unreasonable conduct under *Strickland*. Further, Defendant does not explain how his unsubstantiated allegation that Ms. Franklin suspected the Government of monitoring her correspondence would mean that she was colluding with the Government. Defendant's ineffective assistance of counsel claim fails on this issue.

### J.    Failure to Provide Records and Information to Defendant

Defendant next takes issue with his counsel's failure to provide records to him for preparing the present motion; failure to inform Defendant that another attorney was

assisting with his appeal; and failure to accept Defendant's input at trial or on appeal.[3] First, Defendant cites to no authority supporting the argument that his counsel was ineffective in failing to provide him records to prepare a § 2255 motion. Further, Defendant's vague references to his counsel not accepting his input fails to establish ineffective assistance of counsel where 1) Defendant does not explain any specific suggestion(s) rejected by counsel; and 2) Defendant does not show a "reasonable probability that the outcome would have been different" had counsel accepted his requests. *See United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995) ("[A]ll that the Defendant urges is speculation, not a reasonable probability that the outcome would have been different. Accordingly, he cannot establish prejudice."); *see also Turrentine v. Mullin*, 390 F.3d 1181, 1205 (10th Cir. 2004) (internal quotations and citation omitted) ("Mr. Turrentine must show more than that his counsel's action had some conceivable effect on the outcome of the proceeding, because virtually every act or omission of counsel would meet that test.").

### K.    Failure to Make Certain Arguments at Trial or on Appeal

Defendant argues that his counsel was ineffective in failing to make various arguments at trial or on appeal. First, Defendant contends that his counsel erred in failing to use Elisens' criminal history, history of mental illness, and failure to abide by his terms of probation to impeach Elisens' testimony. However, defense counsel used evidence of

---

[3] Defendant also argues, briefly, that "[h]ad [his] counsel argued fruits of the poisonous tree and won maybe we would not be here today arguing the case again," and that his counsel "also should have motioned for a remedy under the sentencing." [Doc. No. 340, at 5]. These are the types of vague, speculative arguments that are not sufficient under *Strickland*. *See Byrd*, 645 F.3d at 1168 ("[M]ere speculation is not sufficient to satisfy this burden.").

Elisens' several felony convictions to impeach his testimony under FED. R. EVID. 609 [Tr. at 381-85]; questioned Elisens regarding his thirty-month prison sentence for intending to unlawfully damage or destroy a building by means of fire or explosive [Tr. at 385]; and referenced Elisens' prior convictions and violation of supervised release to argue on direct appeal that Defendant had not engaged in criminal activity prior to the Government's involvement, but was merely venting with Elisens as a like-minded individual.

Defendant also argues that his counsel was ineffective for failing to argue on appeal issues related to Elisens' phone and laptop, and the Government's failure to get a "mirror image" of Elisens' devices. The Court previously denied Defendant's motion to dismiss based on destruction of evidence [Doc. No. 107], which focused on Elisens' deleting information from his devices before returning them to the FBI and the Government's alleged failure to preserve evidence from Elisens' devices. The Court found that the Government's failure to mirror-image Elisens' devices did not impact Defendant's due process rights because Defendant had not shown that "he would be unable to obtain comparable evidence by other reasonably available means." [Doc. No. 143, at 3]. Specifically, the Court noted that, to the extent Defendant's Facebook conversations were on Elisens' devices, the conversations would also be contained in Defendant's laptop, cellphone, and Facebook records. *Id.* Further, as noted by the Government, Elisens' personal cell phone, computer, and other electronic devices were later seized by the FBI, and the extractions were produced in discovery in January of 2019 [Doc. No. 349, at 13; Doc. No. 355, at 1]. For these reasons, Defendant has not shown that his counsel acted unreasonably by failing to re-argue this issue on appeal. *Cargle v. Mullin*, 317 F.3d 1196,

19

1202 (10th Cir. 2003) (quotation and citation omitted) ("[C]ounsel need not (and should not) raise every nonfrivolous claim [on appeal], but rather may select from among them in order to maximize the likelihood of success on appeal.").

Finally, Defendant argues that his counsel was ineffective for failing to contend on appeal that they were not permitted to inspect the van and inert bomb prior to it being disassembled. As noted by the Government, Defendant's prior counsel (Terri Coulter) inspected the van and explosive device components in person on August 24, 2017 [Doc. No. 349, at 13]. Thereafter, the Court granted the Government's unopposed motion for destruction of evidence [Doc. No. 96] due to the continued degradation and fire hazards associated with storing 1000 pounds of ammonium nitrate-fuel oil (ANFO) [Doc. No. 98]. As defense counsel had the opportunity to inspect the van and inert bomb components, Defendant has failed to show that his counsel's failure to make arguments on appeal related to the van inspection was objectively unreasonable under *Strickland*.

Further, Defendant has not shown how he was prejudiced. Although Defendant alleges that the inert bomb had already been disassembled by the time Ms. Coulter inspected the van and inert bomb, Defendant has not explained what exculpatory evidence would have been found in the van. Defendant's argument that "there was no evidence to prove that he did anything, except pictures of the device" was heavily outweighed at trial by: Barry Black's testimony that after Defendant left the van, he inspected the device and confirmed that Defendant had armed the device per the instructions; Williams' testimony that Defendant left the van in the alley and was excited when he got into Williams' vehicle to drive to a viewing location; Williams' testimony that Defendant had "mentioned he

wanted to be in an area close enough to downtown to hear the explosion"; Williams' testimony that Defendant asked for Williams' burner phone and dialed the number to explode the device; and Williams' testimony that, when the bomb did not detonate, Defendant "began reviewing the steps he took in arming the device." [Tr. at 864; Tr. at 720-21]. Accordingly, Defendant has failed under *Strickland*'s second prong to show a reasonable probability that, but for his counsel's failure to argue on appeal issues related to the van's inspection, the result of Defendant's proceedings would have been different.

## II.    Defendant's Remaining Claims

In addition to his claims of ineffective assistance of counsel, Defendant makes various arguments attacking his conviction and sentence, to include lack of probable cause, illegal search and seizure, actual innocence, and prosecutorial misconduct. As provided herein, most of Defendant's stand-alone arguments could have been made on direct appeal but were not. "Section 2255 is not available to test the legality of matters which should have been raised on appeal." *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994) (quotations and citation omitted). "A defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *Allen*, 16 F.3d at 378 (citing *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993)).

Defendant also raises the issues of the Court's application of the twelve-level terrorism enhancement, "FBI manipulation," sentencing entrapment, and "FBI perjury about schizophrenia," all of which were fairly encompassed in Defendant's direct appeal.

Where arguments are considered and disposed of on direct appeal, Defendant may not raise the issues under § 2255. *See United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994) (citing *Cook*, 997 F.2d at 1318 n.6); *see also United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989) ("Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255."). Accordingly, Defendant's arguments regarding the terrorism enhancement, "FBI manipulation," sentencing entrapment[4], and "FBI perjury about schizophrenia" are barred.

### A.     Probable Cause

Defendant argues that the FBI lacked probable cause for its investigation into Defendant's conduct because Elisens was an unreliable informant and many of his statements were untrue. Referencing messages between Defendant and Elisens, Defendant argues that "[h]ad the FBI actually [taken] a mirror image of Elisens['] computer then maybe we could provide evidence that [Defendant] didn't write those damning messages,"

---

[4] Defendant argues that if the Court declines to find outrageous government conduct, "then sentencing entrapment/manipulation should have been found especially when the government chose everything." [Doc. No. 340, at 28]. The Tenth Circuit has held that such arguments, "whether presented as 'sentencing factor manipulation' or otherwise, should be analyzed under our established outrageous conduct standard." *United States v. Lacey*, 86 F.3d 956, 963 (10th Cir. 1996); *see also United States v. Norwood*, Case No. CR-06-180-F, 2011 WL 13248866, at *7 (W.D. Okla. Oct. 7, 2011) ("Claims of sentencing factor manipulation are analyzed under the 'outrageous conduct' standard which is invoked to prevent the government from prosecuting a crime developed through egregious investigatory tactics."). Defendant's trial counsel sought a downward departure for sentencing entrapment, which was denied by the Court. In his § 2255 motion, Defendant merely rehashes his outrageous government conduct argument, which was disposed of on direct appeal. Accordingly, the issue is barred.

and further speculates that "Elisens had [Defendant's] passwords and could have easily logged into [Defendant's] account and placed them there." [Doc. No. 340, at 10].

In response, the Government contends that Defendant's probable cause argument is procedurally defaulted as it could have been raised on direct appeal but was not. The Court agrees. Further, Defendant did not attempt to show cause for his procedural default, nor has Defendant shown that a fundamental miscarriage of justice will occur if his probable cause argument is not addressed. Accordingly, because Defendant failed to raise the issue of probable cause on direct appeal, the issue is procedurally barred. *See Allen*, 16 F.3d at 378.

### B.    Illegal Search and Seizure

Defendant next argues that the FBI violated his 4th Amendment rights by having Elisens record their conversations. As the Government notes, "Fourth Amendment violations are not reviewable in a § 2255 motion when the federal prisoner has had a full and fair opportunity to litigate the Fourth Amendment claim at trial and present issues on direct appeal." *Cook*, 997 F.2d at 1317. Here, Defendant did not allege in his motion that he did not have a full and fair opportunity to litigate his Fourth Amendment claims. Further, even if Defendant had so alleged, the Court finds that no Fourth Amendment violation occurred.

Defendant claims his Fourth Amendment rights were violated when Elisens visited Defendant's home and recorded their in-person conversations. However, a defendant's consensual conversations with an informant may be recollected and recorded without violating the Fourth Amendment. *United States v. Longoria*, 177 F.3d 1179, 1184 (10th Cir.

1999) (noting that a defendant did not have a reasonable expectation of privacy as to statements made in informant's presence and that he "assumed the risk that his conversations would be overheard and recorded by the informant."); *United States v. White*, 401 U.S. 745, 751 (1971) ("[A] police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. For constitutional purposes, no different result is required if the agent instead … simultaneously records [the conversations] with electronic equipment which he is carrying on his person…."). Defendant's Fourth Amendment rights were not violated when Elisens – while at Defendant's home with Defendant's consent – recorded his conversations with Defendant. Rather, Defendant bore the risk that Elisens could report the substance of their conversations to law enforcement.[5] *See White*, 401 U.S. at 752 ("Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police.").[6]

---

[5] Defendant's brief argument that Elisens' recordings violated his Fifth Amendment protection against self-incrimination similarly fails. *See Illinois v. Perkins*, 496 U.S. 292, 296 (1990) ("Conversations between suspects and undercover agents do not implicate the concerns underlying *Miranda*."); *United States v. Henry*, 447 U.S. 264, 272 (1980) ("[T]he Fifth Amendment has been held not to be implicated by the use of undercover Government agents before charges are filed because of the absence of the potential for compulsion."); *United States v. Cook*, 599 F.3d 1208, 1214 (10th Cir. 2010) ("Deception which takes advantage of a suspect's misplaced trust in a friend or fellow inmate does not implicate the right against self-incrimination nor the Fifth Amendment right to counsel.").

[6] Further, Defendant has not cited any persuasive authority to support his position that the recorded conversations between himself and Elisens should have been suppressed merely because his parents had allegedly told Elisens not to visit anymore.

### C.    Actual Innocence

Defendant argues actual innocence "based on the fact that [18 U.S.C. § 2332a] should be voided for vagueness." [Doc. No. 340, at 41]. However, "actual innocence does not constitute a freestanding basis for habeas relief." *Farrar v. Raemisch*, 924 F.3d 1126, 1131 (10th Cir. 2019). Even if courts recognized freestanding actual-innocence claims, "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *McElhaney v. Bear*, 700 F. App'x 872, 875 (10th Cir. 2017) (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)). "A prisoner can establish actual innocence in post-conviction proceedings only by bringing forward new exculpatory evidence." *Hale v. Fox*, 829 F.3d 1162, 1171 (10th Cir. 2016) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)). Here, Defendant appears to argue that Section 2332a does not have a mens rea and that it was improper for the Court to use an intent standard of "knowingly" for the charged conduct. Defendant makes no attempt to argue factual innocence, nor has Defendant alleged the existence of any new exculpatory evidence. Accordingly, Defendant's actual innocence argument fails.

### D.    Prosecutorial Misconduct

Defendant claims that the prosecutor committed misconduct by vouching for Elisens' character and "allow[ing]" Elisens to give his opinions and lie at trial. The Government argues that this issue could have been raised at trial or on appeal, but was not, and is procedurally barred. The Court agrees. *See Allen*, 16 F.3d at 378.

## CONCLUSION

For the reasons set forth herein, Defendant's § 2255 motion is denied. An evidentiary hearing is not required where the "case record conclusively shows the prisoner is entitled to no relief." *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988). Under the applicable standard, an evidentiary hearing is not required here.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to a movant. A COA may issue only upon "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration, the Court finds this standard is not met in this case, and a COA should be denied.

**IT IS THERFORE ORDERED** that Defendant's Motion to Vacate Under 28 U.S.C. § 2255 and Brief in Support [Doc. Nos. 339, 340] is **DENIED**. Further, a COA is **DENIED**. A separate judgment shall be entered.

**IT IS FURTHER ORDERED** that Defendant's Motion to Appoint Counsel [Doc. No. 352] is **DENIED**.[7]

---

[7] Because the Court finds that Defendant's § 2255 motion should be denied on the merits, and an evidentiary hearing is not necessary, the Court declines to appoint counsel.

**IT IS SO ORDERED** this 9th day of April, 2024.

TIMOTHY D. DeGIUSTI
Chief United States District Judge